IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HUEY JIUAN LIANG,**

       **Plaintiff,**

  vs.                                        Civil Action 2:14-cv-0099
                                                    Judge Frost
                                                    Magistrate Judge King

**AWG REMARKETING, INC.,** *et al.***,**

       **Defendants.**

<u>OPINION AND ORDER</u>

      This matter is before the Court on the *Motion for Pro Hac Vice Admission of Edward O. Pacer and David J. Scriven-Young as Attorneys for Third-Party Defendant*, ECF 111 ("*Motion*").  Defendant and third party plaintiff AWG Remarketing, Inc. ("AWG") has opposed the *Motion*, ECF 113 ("*Opposition*"), and third party defendant William Greenwald ("Mr. Greenwald") has filed a reply, ECF 119 ("*Reply*").  For the reasons that follow, the *Motion* is **GRANTED**.

**I.    BACKGROUND**

      Plaintiff, a former partner in and successor-in-interest to Automotive Remarketing Xchange, LLC ("ARX"), was primarily in the business of creating, developing, marketing and distributing proprietary online software for the wholesale automotive auction market.  *Complaint*, ECF 1, ¶ 3, 10.  Plaintiff instituted this copyright action, 17 U.S.C. § 101 *et seq.*, on October 17, 2013, asserting copyright violations as well as various business torts

against defendants AWG Remarketing, Inc. ("AWG"), Group 3 Auctions, LLC ("Group 3") and Columbus Fair Auto Auction, Inc. ("CFAA") (collectively, "defendants"), all of which are in the automotive wholesale auction software business.  *Id*. at ¶¶ 4-6, 30-55.  Defendants deny liability[1] and assert counterclaims[2] seeking declarations of non-infringement and invalidity of plaintiff's copyright registrations.  ECF 30, 31, 32, 82, 84, 85.  On February 11, 2014, defendants also filed a third party complaint against William Greenwald ("Mr. Greenwald" or "third party defendant"), a former majority shareholder in AWG, asserting claims of breach of a stock purchase agreement and for indemnification and defense in connection with plaintiff's claims.  ECF 33 ("*Third Party Complaint*").  The third party complaint also asserts claims of securities fraud in violation of O.R.C. § 1707.41 and of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and/or Rule 10b-5.  *Id*.[3]  On February 13, 2015, Mr. Greenwald's current counsel ("movant") moved for leave for Edward O. Pace and David J. Scriven-Young, Illinois attorneys with the law firm of Peckar & Abramson, P.C. ("Peckar & Abramson"), to appear *pro hac vice* as co-counsel for Mr. Greenwald in this action.  *Motion*, ¶¶ 1, 4-5.  Both attorneys are members in good standing of the highest court of Illinois.  *Id*. at ¶¶ 2-3 (citing attached certificates of good

---

[1] On March 16, 2015, defendants jointly moved for partial summary judgment on the issue of plaintiff's standing.  ECF 120.
[2] The amended counterclaims, filed on November 6 and 7, 2014, added William Bounnaud, an individual claiming to have been a co-owner with plaintiff in ARX, as a counterclaim defendant.  ECF 82, 84, 85.  Mr. Bonnaud's motion to dismiss the amended counterclaims against him, ECF 101, remains pending.
[3] The Court denied Mr. Greenwald's motion to dismiss the third party complaint on January 5, 2015.  *Opinion and Order*, ECF 100.

standing for Attorneys Pacer and Scriven-Young).

Prior to the filing of this litigation, Peckar & Abramson entered into a retainer agreement with the entity Auto Wholesaler Group, Inc. d/b/a AWG Remarketing ("Auto Wholesaler") on August 6, 2007. ECF 119-2, PAGEID#:1515-1516 (letter dated August 6, 2007 from Attorney Stephen P. Katz of Peckar & Abramson, addressed to Mr. Greenwald and signed by Attorney Katz and "Agreed and Consented to" by Mr. Greenwald in August 2007) ("Retainer Agreement"); *Supplemental Declaration of Kevin J. O'Connor, Esq.*, ECF 119-2, PAGEID#:1512-1513, ¶ 3 (authenticating Retainer Agreement) ("*Supplemental O'Connor Declaration*").[4] According to AWG,

> [t]here is some confusion whether Auto Wholesale Group, Inc. d/b/a/ AWG Remarketing is technically the same corporate entity that was later incorporated as AWG Remarketing, Inc., but the evidence shows that any such technical distinction is immaterial because AWG Remarketing, Inc. was a continuation of the Auto Wholesaler Group, Inc. business[.]

*Opposition*, p. 2. Mr. Greenwald, however, takes the position that Auto Wholesaler no longer exists, having closed its doors in approximately 2011, and that AWG is a new corporation separate from Auto Wholesaler. *Reply*, pp. 3-4. *See also Deposition of Marc*

---

[4] Attorney O'Connor is a shareholder in Peckar & Abramson. *Id*. at ¶ 1. He submitted this affidavit in connection with a motion to disqualify Peckar & Abramson in a separate action filed in the United States District Court for the District of New Jersey, *Greenwald v. Holstein, et al.*, No. 2:13-cv-06724 ("the New Jersey action"). *Id*. at ¶¶ 1-2. New Jersey defendant Marc Holstein provided information technology services to Auto Wholesaler as a consultant/independent contractor beginning in 2001. *Transcript of Recorded Opinion*, ECF 119-1, p. 2. The New Jersey court ultimately denied Mr. Holstein's motion to disqualify Peckar & Abramson. ECF 119-1, PAGEID#:1504-1506. In the briefing of the *Motion* presently before this Court, the parties rely extensively on evidence submitted in connection with defendant Holstein's motion to disqualify filed in the New Jersey action.

*Holstein*, ECF 119-4, p. 24 (testifying that Auto Wholesaler "closed the doors. They filed something that says they are no longer in business. And it might have been in again, I'm estimating, 2011"); *Certificate of Incorporation of AWG Remarketing, Inc.*, ECF 119-5, PAGEID#:1672-1675 (filed June 16, 2009).

Setting aside this dispute,[5] the Retainer Agreement identified the scope of Peckar & Abramson's representation of Auto Wholesaler:

> This letter, when signed below by you where indicated, shall constitute or Retainer Agreement in connection with out general representation of Auto Wholesaler Group, Inc. d/b/a AWG Remarketing in connection with the negotiation of a technology license agreement with Palaris, Inc. and for other general corporate representation, you hereby retain the firm of Peckar & Abramson, P.C. as your counsel.

*Id*. at PAGEID#:1515. *See also Supplemental O'Connor Declaration*, ¶ 3 (averring that Mr. Greenwald executed the Retainer Agreement in his individual and corporate capacities). A fee schedule in connection with this representation identified Attorney Pacer as a Peckar & Abramson attorney who may perform work on behalf of Auto Wholesaler. *Peckar & Abramson, P.C. Hourly Fee Schedule*, ECF 113-2, PAGEID#:1409 (listing Attorney Pacer's hourly rate as counsel with Peckar & Abramson).

According to Mr. Greenwald, Peckar & Abramson performed "very little legal work" for "AWG" between 2007 and December 2011. *Declaration of William Greenwald*, ECF 113-3, ¶¶ 13-14 ("*Greenwald Declaration*") (filed in the New Jersey action). *See also Transcript*

---

[5]The parties should not construe anything in this *Opinion and Order* as a commentary on the merits of this dispute.

*of Hearing* (August 14, 2014), ECF 113-8, PAGEID#:1440 (Attorney O'Connor representing to the Court that "I can give you the bills for AWG for the work, very limited work, that was done between 2007 and the closing in 2011.  There literally was nothing to speak of").  For example, Attorney Katz reviewed a technology license agreement with another corporation, Palaris, Inc., in 2007 and handled the corporate formation of AWG, *i.e.*, filed a certificate of incorporation, in June 2009.  *Declaration of Stephen Katz*, ECF 113-5, ¶ 9 ("*Katz Declaration*"); Retainer Agreement, PAGEID#:1515.

On August 29, 2011, Peckar & Abramson prepared a Client/Matter Information Sheet to create a new matter to represent Mr. Greenwald, former majority shareholder in AWG, in a proposed sale of his AWG stock.  *Supplemental O'Connor Declaration*, ¶ 4; *Client/Matter Information Sheet*, ECF 119-2, PAGEID#:1517.  This sheet identified Mr. Greenwald as the only client in the proposed transaction.  *Id*.  While the sheet lists Mr. Greenwald's address as "c/o AWG Remarketing," Peckar & Abramson later billed to Mr. Greenwald's home address the time expended on the stock sale.  *Supplemental O'Connor Declaration*, ¶ 4; *Client/Matter Information Sheet*, ECF 119-2, PAGEID#:1517.  In the negotiations leading up to the stock sale, Peckar & Abramson advised other AWG shareholders that the firm represented only Mr. Greenwald in the upcoming sale.  *See*, *e.g.*, *Declaration of Abby Weiner*, ECF 119-7, PAGEID#:1748-1760 ("*Weiner Declaration*"), ¶¶ 1 (averring in the New Jersey action that she, as Peckar & Abramson counsel, represented Mr. Greenwald in the sale of his AWG stock on or about December 8, 2011),

5

48 (averring that Peckar & Abramson "went to such great lengths to be sure [New Jersey defendant] Holstein and others understood that we represented Mr. Greenwald only"). For example, Peckar & Abramson circulated a memorandum accompanying drafts of a stock purchase agreement to all AWG shareholders on November 17, 2011, advising the shareholders that Peckar & Abramson represented only Mr. Greenwald in the approaching AWG stock sale to Group 3. *Id*. at ¶ 31; *Memorandum dated November 17, 2011*, ECF 119-7, PAGEID#:1762-1763 ("Please note that we represent William Greenwald in this transaction. Should you have questions or concerns regarding the enclosed documents, please consult with your attorney or speak with Mr. Greenwald."). *See also Weiner Declaration*, ¶ 48; email dated December 5, 2011 from Attorney Weiner directed to Siv Shankar, an AWG shareholder, ECF 119-7, PAGEID#:1793 ("We cannot review your employment agreement [with Group 3], as we are not your counsel. We represent William Greenwald. It would be a conflict of interest for us to review your agreement. We suggest you have your own counsel review the Agreement.").

On or around December 8, 2011, Peckar & Abramson represented Mr. Greenwald in the sale of his AWG stock to Group 3 through a Stock Purchase Agreement. *Weiner Declaration*, ¶ 1; *Third Party Complaint*, ¶ 3; *Katz Declaration*, ¶ 10 ("Of course, AWG was not a party to the 2011 stock transfer."); *Transcript of Hearing*, ECF 119-6, PAGEID#:1721 (New Jersey defendant Holstein's attorney advising the Court that "[T]his was a stock sale. This was not an asset sale. They [Peckar & Abramson] could not have been representing AWG"). The parties to the

6

Stock Purchase Agreement were various individual sellers, including Mr. Greenwald, and Group 3 as the buyer. *Stock Purchase Agreement*, ECF 119-7, PAGEID#:1766 (reciting names of the parties to the agreement), PAGEID#:1791 (listing sellers' addresses, including Mr. Greenwald's address in Chestnut Ridge, New York, with a copy sent to Attorney Katz at Peckar & Abramson's New Jersey office). *See also Declaration of Keith Whann*, ECF 119-8 ("*Whann Declaration*"), ¶ 3 (averring, *inter alia*, that he is the Manager of Group 3, which "was formed for the exclusive purpose of purchasing" AWG stock on or around December 8, 2011 and that "AWG was not a party to that Transaction").

In the case presently before this Court, AWG now opposes the *Motion* seeking leave for Attorneys Pace and Scriven-Young of Peckar & Abramson to appear *pro hac vice* as co-counsel on behalf of Mr. Greenwald. AWG contends that Peckar & Abramson has an attorney-client relationship with AWG, thus presenting a conflict of interest should that firm represent Mr. Greenwald in the present action.

**II. STANDARD**

An attorney seeking *pro hac vice* admission in this Court must file a motion that conforms to the following requirements:

> (1) be signed by a permanent member of the bar of this Court; (2) be accompanied by the filing fee prescribed by the Court for pro hac vice admission except as provided in subsection (g)(4) of this Rule; and (3) be accompanied by an original certificate of good standing from the highest court of a State (and not from another federal court) that has been issued not more than three months prior to the date of the motion.

S.D. Ohio Civ. R. 83.3(e). This Court has discretion to grant or deny motions to appear *pro hac vice*. *In re Mosher*, 25 F.3d 397, 399-400

7

(6th Cir. 1994) (citations omitted); S.D. Ohio Civ. R. 83.3(e). In determining whether to grant such admission, this Court must consider the interests of the applicant attorney in practicing law, the interests of clients in selecting the counsel of their choice, and the public interest in permitting only those applicant attorneys who possess "the professional and ethical competence expected of an officer of the court." *In re Mosher*, 25 F.3d at 400. Where a litigant opposing a request for an attorney's admission seeks to deprive an adversary of "chosen counsel who previously has proven successful in similar cases[,]" "only the strongest evidence of unfitness can justify denial of admission[.]" *Id*. For example, a district court may properly deny admission where counsel's admission is "detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest." *Stilley v. Bell*, No. 04-1283, 155 F. App'x 217, at *222-23 (6th Cir. Nov. 23, 2005) (affirming denial of *pro hac vice* admission where moving attorney had an "apparently unprecedented number of violations of the Model Rules of Professional Conduct, which culminated in a Caution, two Reprimands, and a thirty (30) day Suspension" that "would set a bad example for the present members of the bar" and because "many of his previous violations might present grounds for a claim of ineffective assistance of counsel if repeated in the criminal matter for which he seeks admission").

**III. DISCUSSION**

The parties do not disagree that the *Motion* satisfies the

8

requirements of S.D. Ohio Civ. R. 83.3(e) or that Attorneys Pacer and Scriven-Young are members in good standing of the highest court of Illinois.  AWG claims, however, that it is a current client of Peckar & Abramson and that Rule 1.7 of the Ohio Rules of Professional Conduct therefore prohibits that firm from acting in any capacity adverse to AWG in this action.  *Opposition*, pp. 5-7.  Mr. Greenwald disagrees, arguing that Rule 1.7 does not apply because AWG is not a current client of Peckar & Abramson.  *Reply*, pp. 8-11.

Rule 1.7 provides in pertinent part:

(a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

   (1) the representation of that client will be directly adverse to another current client;

   \*             \*             \*             \*

(b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

   (1) the lawyer will be able to provide competent and diligent representation to each affected client;

   (2) each affected client gives *informed consent, confirmed in writing*;

   (3) the representation is not precluded by division (c) of this rule.

(c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:

   (1) the representation is prohibited by law;

   (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

Ohio Prof. Cond. R. 1.7(a), (b), (c) (emphasis in original).  The comments to this rule further clarify that "absent consent, a lawyer may not act as an advocate in one proceeding against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."  Ohio Prof. Cond. R. 1.7 cmt. 11.

In the case presently before the Court, AWG alleges that it is a current client of Peckar & Abramson because that firm served as legal counsel to AWG and never terminated that representation or sought AWG's consent to act in a capacity adverse to AWG in any matter.  *Opposition*, p. 6.  *See also Declaration of Marc Holstein*, ECF 113-7 ("*Holstein Declaration*"), ¶¶ 5-6; *Reply Declaration of Marc Holstein*, ECF 113-9 ("*Holstein Reply Declaration*"), ¶ 5.  AWG goes on to argue that it is immaterial whether the two attorneys seeking *pro hac vice* admission – *i.e.,* Pacer and Scriven-Young – previously worked on any AWG matter because the firm's prior representation is imputed to these individual attorneys "[b]y operation of law[.]"  *Opposition*, p. 6.

AWG's arguments are not well-taken.  In determining whether AWG is a current client of Peckar & Abramson, the Court turns to substantive law.  Ohio Prof. Cond. R. 1.7 cmt. 9 ("In large part, principles of substantive law outside of [the Ohio Rules of Professional Conduct] determine whether a client-lawyer relationship exists or is continuing.").  "The attorney-client relationship is consensual in nature, and, absent any ethical restraints imposed by the Code of Professional Responsibility, may be terminated by either

10

party." *Artromick Int'l, Inc. v. Drustar, Inc.*, 134 F.R.D. 226, 229 (S.D. Ohio 1991) (citing *Brown v. Johnstone*, 5 Ohio App.3d 165 (Ohio Ct. App. 1982)). However, "[e]ven without overt statements or acts by either party, the relationship may lapse over time." *Id*. Indeed, "the law will imply an end to the relationship where it would be objectively unreasonable to continue to bind the parties to each other." *Id*. at 230. In determining whether it is objectively unreasonable to find an existing attorney-client relationship, courts must consider the specific facts of each case and the actual or reasonable expectations of the parties. *Id*. at 230. *See also id*. at 230-32 (holding that it was objectively unreasonable to find an existing attorney-client relationship where there "is a period of over a year" during which counsel did no work for the party, "the attorney's last bill is both disputed and unpaid, and when each of several new opportunities to use the attorney's services is directed to another firm").

In the case presently before the Court, Peckar & Abramson performed limited legal work for Auto Wholesaler / AWG between 2007 and 2011. *See*, *e.g.*, *Transcript of Hearing* (August 14, 2014), ECF 113-8, PAGEID#:1440. More specifically, the present record reflects only two instances of legal work: (1) reviewing a technology license agreement in 2007, and (2) filing AWG's certificate of incorporation in June 2009. *Katz Declaration*, ¶ 9; Retainer Agreement, PAGEID#:1515. Between June 2009 and August 2011, Peckar & Abramson performed no legal work "of any significance." *Id*. at ¶ 10. Although

11

AWG argues that Attorney Katz has "downplayed" the significance of any work done during this period, *Opposition*, p. 3, the sworn *Katz Declaration* is uncontroverted in this regard.  In any event, AWG did not file the original *Complaint* in this action until October 17, 2013, *i.e.,* more than two years after Peckar & Abramson performed any legal work, significant or otherwise, for AWG.  Indeed, AWG selected other counsel to represent it in the instant action.  Although there is no evidence of overt statements or acts by either AWG or Peckar & Abramson terminating their attorney-client relationship, the Court cannot conclude, based on the present record, that it is objectively reasonable to continue to bind these parties to each other.  *See Artromick Int'l, Inc.*, 134 F.R.D. at 230-32.  Under these circumstances, the Court finds that the attorney-client relationship between AWG and Peckar & Abramson has lapsed and that AWG is not a current client of Peckar & Abramson.  Rule 1.7 of the Ohio Rules of Professional Conduct therefore does not apply to the present dispute and does not prohibit Peckar & Abramson's appearance on Mr. Greenwald's behalf.

AWG next argues that the Court should deny the *Motion* because, as AWG's former counsel, Peckar & Abramson should be prohibited from acting in any capacity adverse to AWG in this action. *Opposition*, pp. 7-9.  According to AWG, this is a "substantially related matter" and, moreover, only AWG's written consent would permit Peckar & Abramson to use any information collected about AWG to AWG's disadvantage. *Opposition*, pp. 7-9.  Rule 1.9 of the Ohio Rules of Professional

12

Conduct, which addresses duties owed to former clients, provides in relevant part:

> (a) Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.
>
>  *   *    *    *
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter do either of the following:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known;
>>
>> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Ohio Prof. Cond. R. 1.9(a), (c). The comments to this rule further address the scope of a covered "matter":

> The scope of a "matter" for purposes of this rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

Ohio Prof. Cond. R. 1.9 cmt. 2. *See also* Ohio Prof. Cond. R. 1.10(a) (imputing conflicts of interest to all lawyers of the same firm under certain circumstances). A "substantially related matter" includes not

13

only the same transaction or legal dispute but also "one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio Prof. Cond. R. 1.0(n). However, information rendered obsolete by the passage of time or general knowledge of an organizational client's policies and practices ordinarily will not preclude subsequent representation. Ohio Prof. Cond. R. 1.9 cmt. 3. "The burden of proof lies with the party seeking disqualification, who need only show that the matter or cause of action of the previous representation of the former client is substantially related to the matters of the current suit." *Best v. Mobile Streams, Inc.*, No. 1:12-cv-564, 2013 U.S. Dist. LEXIS 3313, at *13-14 (S.D. Ohio Jan. 9, 2013).

In the case presently before the Court, AWG takes the position that this action is "substantially related" to Peckar and Abramson's prior representation of AWG. *Opposition*, p. 8. This Court disagrees. As set forth above, the record reflects only two specific examples of legal services rendered by Peckar & Abramson on AWG's behalf: (1) review of a technology license agreement with Palaris, Inc., in 2007, and (2) filing AWG's certificate of incorporation in June 2009. *Katz Declaration*, ¶ 9; Retainer Agreement, PAGEID#:1515. AWG argues that this action implicates warranties and representations about licenses and intellectual property that Peckar & Abramson helped negotiate as AWG's general counsel. *Opposition*, p. 8. However, AWG points to

14

nothing in the record to establish that the license agreement with Palaris, Inc., is a "substantially related matter" *vis à vis* the present litigation.  The mere fact that the technology license agreement with Palaris, Inc., implicated intellectual property rights does not render that matter "substantially related" to this action. *See*, *e.g.*, *Best*, 2013 U.S. Dist. LEXIS 3313, at *15 ("Plaintiffs['] assertion that the previous patent license dispute is substantially related to the instant litigation simply because it involved plaintiffs['] intellectual property rights claims (notably, against a non-party) is insufficient to establish a substantial relation under the Ohio Rules of Professional Conduct.").  In addition, although AWG implies that Peckar & Abramson represented it in the stock purchase of AWG shares in December 2011, *see Opposition*, p. 8, nothing in the record supports that implication.  Instead, the record reflects that Peckar & Abramson represented only Mr. Greenwald in that transaction and that AWG was not a party to the Stock Purchase Agreement.  *See Supplemental O'Connor Declaration*, ¶ 4; *Client/Matter Information Sheet*, ECF 119-2, PAGEID#:1517; *Weiner Declaration*, ¶¶ 1, 31, 48; *Memorandum* dated November 17, 2011, ECF 119-7, PAGEID#:1762-1763; ECF 119-7, PAGEID#:1793; *Katz Declaration*, ¶ 10; *Transcript of Hearing*, ECF 119-6, PAGEID#:1721.  Similarly, AWG points to no evidence establishing that the filing of the certificate of incorporation is substantially related to the present action.  For all these reasons, then, the Court concludes that AWG has failed to establish that Rule 1.9(a) precludes Peckar & Abramson's representation of Mr. Greenwald

in this action.

AWG also contends that Rule 1.9(c) prohibits Peckar & Abramson from using any information collected about AWG to AWG's disadvantage in the firm's representation of Mr. Greenwald. *Opposition*, p. 8. According to AWG, it is "impracticable to parse what information Peckar and Abramson learned while representing AWG [from July 2009 to December 2011] and when Peckar and Abramson learned it." *Id*. However, nothing about the nature of the services rendered several years ago, *i.e.*, review of a license agreement in 2007 and the filing of a certificate of incorporation in 2009, persuades this Court that there is a substantial risk that Peckar & Abramson learned confidential information that it could use to AWG's disadvantage in this litigation. *See* Ohio Prof. Cond. R. 1.9 cmt. 3 (providing that information acquired in a prior representation may be rendered obsolete over time, that general knowledge ordinarily does not preclude a subsequent representation and that a court may base its conclusion about whether the lawyer/firm possesses material, confidential information on the "nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services"). Because AWG has not shown that Peckar & Abramson acquired confidential information relevant to the issues in the present litigation, Rule 1.9(c) does not prohibit Peckar & Abramson's representation of Mr. Greenwald. *See*, *e.g.*, *Lamson & Sessions Co. v. Mundinger*, No. 4:08CV1226, 2009 U.S. Dist. LEXIS 37197, at *17-18 (S.D. Ohio May 1,

2009) (where party seeking to disqualify law firm failed to identify information relevant to the current dispute, that party failed to justify its request for disqualification). In short, AWG has failed to establish "the strongest of evidence of unfitness" justifying the denial of Peckar & Abramson's *pro hac vice* admission on Mr. Greenwald's behalf in this action. *In re Mosher*, 25 F.3d at 400.

**WHEREUPON**, the *Motion for Pro Hac Vice Admission of Edward O. Pacer and David J. Scriven-Young as Attorneys for Third-Party Defendant*, ECF 111, is **GRANTED**. Attorneys Pacer and Scriven-Young may appear *pro hac vice* on behalf of Mr. Greenwald, conditional on counsel's registration for electronic filing with this Court,[6] or seeking leave to be excused from doing so, within fourteen days of the date of this *Order*.

April 2, 2015

　　　　　　　　　　　　　　　　　　s/ *Norah McCann King*
　　　　　　　　　　　　　　　　　　Norah McCann King
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[6]Counsel may initiate the registration process at this Court's website, http://www.ohsd.uscourts.gov/cmecf.htm. Problems or questions should be directed to Ms. Lisa Wright, 614.719.3222.

17