```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
HUEY JIUAN LIANG,

          Plaintiff,


     vs.                                Civil Action 2:14-cv-0099
                                        Judge Frost
                                        Magistrate Judge King


AWG REMARKETING, INC., et al.,

          Defendants.
```

OPINION AND ORDER

This matter is before the Court on *Third Party Defendant's Motion to Compel Discovery and for Clarification of Rights Concerning Non-Party Witness Depositions*, ECF 154 ("*Motion to Compel*"). Defendants Group 3 Auction, LLC and AWG Remarketing oppose the *Motion to Compel*, ECF 171 ("*Memo. in Opp.*"), and third-party defendant William Greenwald has filed a reply memorandum, ECF 173 ("*Reply*"). For the reasons that follow, the *Motion to Compel* is **GRANTED in part and DENIED in part**.

I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff, a former partner in and successor-in-interest to Automotive Remarketing Xchange, LLC ("ARX"), was primarily in the business of creating, developing, marketing and distributing proprietary online software for the wholesale automotive auction market. *Complaint*, ECF 1, ¶ 3, 10. In particular, plaintiff developed, marketed, and distributed certain computer code and webpages ("the ARX Program"). *Id.* at ¶ 10. ARX planned to acquire AWG Remarketing, Inc. ("AWG"), a corporation in the automotive

1

wholesale auction software business, and "integrate the ARX Program with AWG's robust database of automotive vehicles and clients." *Id*. at ¶¶ 4, 15.  In particular, "AWG worked with ARX LLC in hosting the ARX Program and preparing for its restricted internet launch in January 2011[,]" which involved, *inter alia*, continued customization of the ARX Program.  *Id*. at ¶¶ 16-18.  Notwithstanding earlier representations that AWG would sell to plaintiff, Group 3 Auctions, LLC ("Group 3") "secretly acquired" AWG and, through the purchase of AWG, gained access to the ARX Program's proprietary source code and altered the ARX Program.  *Id*. at ¶¶ 19-22.  The acquisition of AWG also permitted Columbus Fair Auto Auction, Inc. ("CFAA") "(whose principals arranged funding for G3's acquisition of AWG) gained unfettered access to the ARX Program by a perpetual, royalty-free license fabricated by AWG and G3."  *Id*. at ¶ 23.

Plaintiff instituted this copyright action, 17 U.S.C. § 101, *et seq*., on October 17, 2013, asserting copyright violations as well as various business torts against defendants AWG, Group 3, and CFAA (collectively, "G3 Parties"), all of which are in the automotive wholesale auction software business.  *Id*. at ¶¶ 4-6, 30-55.  The G3 Parties deny liability and assert counterclaims seeking declarations of non-infringement and invalidity of plaintiff's copyright registrations.  ECF 30, 31, 32, 82, 84, 85.

On February 11, 2014, AWG and Group 3 also filed a third party complaint against William Greenwald ("Mr. Greenwald" or "movant"), a former majority shareholder in AWG who sold his interest in AWG to

2

Group 3 through a Stock Purchase Agreement ("the Agreement"). *Defendants AWG Remarketing, Inc. and Group 3 Auctions, LLC's Third Party Complaint Against William Greenwald*, ECF 33, ¶¶ 3, 7 ("*Third Party Complaint*"). Before this date, Mr. Greenwald "took the lead on behalf" of the five other persons owning the remaining AWG shares (collectively, "the AWG sellers") to sell their interests in AWG and negotiated with "Group 3 for the purchase of his AWG stock." *Id*. at ¶¶ 8-9. After these negotiations, the AWG sellers entered into the Agreement with Group 3 on December 8, 2011 ("the Closing Date"). *Id*. at ¶ 11. The Agreement contained warranties and express representations, including that Mr. Greenwald owned all of AWG's business assets free and clear of any claims, disputes, or legal proceedings; that the sale of the AWG stock would not breach any existing agreements with any persons or entities; that he was unaware of any pending or threatened claims by others relative to AWG's assets, which include copyrights in all computer programs and source codes used at any time; that AWG had not received notice from any third-party claiming that AWG was violating another's intellectual property rights; and that AWG had no liabilities other than those expressly disclosed in the Agreement. *Id*. at ¶¶ 12-14. Mr. Greenwald also promised to indemnify, hold harmless, protect, and defend both AWG and Group 3 "from (a) any claims arising out of or resulting from any breach of his representations and warranties, and (b) any claims arising of any activities that occurred prior to the Closing Date." *Id*. at ¶ 15.

3

The *Third Party Complaint* goes on to characterize the *Complaint* as alleging that ARX "supplied the ARX Program as part of a larger discussion with Greenwald whereby" ARX planned to purchase AWG, but "the alleged proposed transaction between Greenwald and ARX" did not occur because AWG closed with Group 3. *Id*. at ¶¶ 19-20. Mr. Greenwald never disclosed: (1) "that Liang or ARX LLC had asserted a right to ownership of any computer code or software used in AWG's business"; (2) "that Liang or ARX LLC had demanded that AWG stop using the ARX Program"; and (3) "that there were any restrictions on any computer software or computer code that AWG used in the course of its business." *Id*. at ¶¶ 23-25. The *Third Party Complaint* asserts claims of breach of the Agreement and for indemnification and costs of defense in connection with plaintiff's claims. *See generally id*. The *Third Party Complaint* also asserts claims of securities fraud in violation of O.R.C. § 1707.41 and of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and/or Rule 10b-5. *Id*. AWG and Group 3 seek an order that Mr. Greenwald must indemnify them and an award of monetary damages as well as attorney's fees and costs. *Id*. at Prayer for Relief. Mr. Greenwald denies liability and contends, *inter alia*, that the *Third Party Complaint* is barred, in whole or in part, by the applicable statute of limitations. *Answer of Third-Party Defendant William Greenwald*, ECF 106, ¶ 71 ("*Greenwald's Answer to Third Party Complaint*").[1]

---

[1] The Court denied Mr. Greenwald's motion to dismiss the third party complaint on January 5, 2015. *Opinion and Order*, ECF 100.

On November 4, 2013, Mr. Greenwald filed a separate action in the United States District Court for the District of New Jersey, which was transferred in June 2015 to this Court. *Complaint*, 2:15-cv-2451, ECF 1 ("the Greenwald Action"). In addition to CFAA and Group 3, Mr. Greenwald names several individuals as defendants, including Marc Holstein, Peter M. Levy, and Keith E. Whann, who are the members of Group 3. *Amended Complaint*, 2:15-cv-2451, ECF 4, ¶¶ 3, 4, 8. In or around 2001, Mr. Greenwald hired Mr. Holstein to serve as Chief Information Officer of AWG. *Id*. at ¶ 21. Mr. Greenwald alleges that in or around September 2010, Mr. Holstein "took an undisclosed interest" in ARX "for purposes of attempting to negotiate the purchase of AWG's assets." *Id*. at ¶ 23. As Mr. Greenwald experienced health problems, he "delegated a substantial part of the operations to Holstein" who "gained more and more control over the day-to-day affairs of AWG[.]" *Id*. at ¶ 24. By September 2010, Messrs. Holstein and Levy "were conspiring to effectuate a transfer of AWG's assets from its shareholders at a reduced price[.]" *Id*. at ¶ 25. According to Mr. Greenwald, Messrs. Holstein and Levy, *inter alios*, knew that Mr. Greenwald would never divest himself of AWG assets if he knew the true value of the company, but nevertheless "set out to portray a totally false picture of AWG's financial picture to Plaintiff in order to fraudulently induce him to sell the business" at a reduced price. *Id*. at ¶¶ 26-27. Mr. Greenwald alleges that through deceit, Messrs. Holstein and Levy secured the sale of AWG. *Id*. at ¶¶ 83-86. Most of

the funds for the purchase of AWG's stock came from the chairman and majority owner of CFAA, which was given a royalty-free, perpetual license to use AWG's software. *Id*. at ¶¶ 89-90. Mr. Greenwald asserts claims of fraud and aiding and abetting fraud, conspiracy to commit fraud, fraudulent inducement of contract, breach of fiduciary duty and aiding and abetting breach of fiduciary duty, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violations of federal and New Jersey securities laws. *Id*. at ¶¶ 96-154.

Following a preliminary pretrial conference conducted pursuant to the provisions of Fed. R. Civ. P. 16(b) in the instant action, the Court issued an order directing, *inter alia*, that all discovery be completed by August 1, 2015. *Preliminary Pretrial Order*, ECF 96, p. 2. In or around late April and mid-May 2015, Mr. Greenwald issued a subpoena *duces tecum* to Mr. Holstein, to which was attached a list of thirty-six (36) categories of documents to be produced, and a subpoena *duces tecum* to Shiv Sangarapillai, which seeks production of nine (9) categories of documents. *See* ECF 154-3, PAGEID#:2828-2841 ("Holstein subpoena") and PAGEID#:2843-2854 ("Sangarapillai subpoena"). When the parties were unable to resolve their dispute regarding the relevancy of some of the information sought in at least one of these subpoenas, *see Declaration of Steven D. Forry*, ECF 171-1, ¶¶ 7-8 ("*Forry Declaration*") and Exhibits A.5 and A.6 attached thereto, the Court conferred with counsel and directed the parties

6

>     to proceed with the subpoenaed deposition in accordance
>     with the following:  Third party defendant Greenwald may
>     pursue only that discovery that is reasonably calculated to
>     lead to the discovery of admissible evidence in connection
>     with the specific misrepresentations/omissions expressly
>     alleged in the *Third Party Complaint*.

*Order*, ECF 150, p. 1.

On May 13, 2015, AWG and Group 3 served their combined answers to Mr. Greenwald's first set of interrogatories and combined responses to his first request for documents.  *See* ECF 154-3, PAGEID#:2857-2865 ("Answers to Interrogatories"); ECF 154-3, PAGEID#:2866-2878 ("Responses to Document Requests").  *See also Declaration of Kevin J. O'Conner*, ECF 154-1, ¶ 6 ("*O'Connor Declaration*") (authenticating discovery responses).  After the parties were unable to resolve their disputes regarding the sufficiency of these discovery responses as well as continued disputes regarding the Holstein subpoena, the *Motion to Compel* was filed.

**II.    STANDARD**

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide a proper response to an interrogatory under Rule 33 or a proper response to a request for production of documents under Rule 34.  Fed. R. Civ. Pro. 37(a)(3)(B).  "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

7

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). *See also Lewis*, 135 F.3d at 402 (determining the proper scope of discovery falls within the broad discretion of the trial court). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg. Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Finally, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. Notwithstanding the apparent objections of AWG and Group 3, *see Memo. in Opp.*, pp. 10 (citing *Forry Declaration*,

8

¶¶ 9-12), the Court concludes that Mr. Greenwald has satisfied this requirement. *See O'Connor Declaration*, ¶¶ 7-12, and Exhibits E and F, attached thereto.

### III. DISCUSSION

Movant seeks an order compelling the G3 Parties to provide answers to certain interrogatories, the requests for production of documents, a privilege log, and "clarify[ing] that the G3 Parties have no right to interfere with the production of all records in the possession, custody or control of these non-party witnesses or to interfere with their upcoming depositions." *Motion to Compel*, p. 23. The Court will address each issue in turn.

#### A. Interrogatories

Mr. Greenwald seeks to compel response or supplemental response to Interrogatory Nos. 5, 6, 7, 8, and 9. *Motion to Compel*, pp. 10-19.

##### 1. Interrogatory No. 5

Interrogatory No. 5 asks AWG and G3 to "[i]dentify all of Group 3's shareholders, members, officers, or directors from date of formation to the present, including percentages of ownership for each, and the date you first learned of this information." ECF 154-3, PAGEID#:2861. AWG and G3 responded as follows:

> **ANSWER:** OBJECTION. Interrogatory No. 5 inappropriately seeks information that relates to the claims asserted in the New Jersey Action and is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case. Further, to the extent "you" refers to AWG before 12/8/11, that information resides with Greenwald.

*Id*.

9

Mr. Greenwald argues that these identities are relevant "to impute knowledge of wrongful conduct to the buyer-LLC" and "relevant on other issues such as damages, as the financial performance of G3 is at issue in evaluating any damage claim here[.]" *Motion to Compel*, p. 17. *See also generally id*. at 12-16. AWG and Group 3 contend that the interrogatories, including Interrogatory No. 5, seek evidence regarding the Greenwald Action, not the *Third Party Complaint*, and take the position that this information is irrelevant to Group 3's financial performance and the damages sought in the *Third Party Complaint*, which include indemnification for any judgment that plaintiff might obtain; reimbursement of Group 3's legal fees and costs, which has already been provided to Mr. Greenwald; and, if plaintiff prevails on her copyright claims, any resulting diminution of AWG's value. *Memo. in Opp.*, p. 13. AWG and Group 3 go on to argue that plaintiff, who is not suggested to be a member of Group 3, is the only person claiming copyright infringement, which claim gives rise to the *Third Party Complaint*. *Id*.

The *Third Party Complaint* alleges that Mr. Greenwald negotiated with Group 3, an entity created to buy the outstanding AWG stock, for the purchase of his stock. *Third Party Complaint*, ¶¶ 9-10. The *Third Party Complaint* further alleges that Mr. Greenwald never disclosed in the Agreement, or at any other time, that plaintiff or ARX had asserted a right to ownership in, or placed any restrictions on, any computer code or software. *Id*. at 23-25. Mr. Greenwald's alleged breach of these representations and warranties underlie the claims

asserted in the *Third Party Complaint*.  *See*, *e.g.*, *id*. at ¶¶ 32-61.  According to Mr. Greenwald, AWG and Group 3 cannot recover on their claims unless they can show that they did not know about plaintiff and ARX prior to the Closing Date.  *See generally id*. at 12-16.  This argument is well-taken.  Discovering the identities of each party to pre-Closing Date negotiations and each party's involvement with ARX is therefore relevant to, *inter alia*, the securities claims in determining whether AWG and Group 3 justifiably relied on Mr. Greenwald's alleged statements or omissions.  Accordingly, as it relates to, the *Motion to Compel* is **GRANTED**.  AWG and Group 3 are **ORDERED** to answer Interrogatory No. 5 within ten (10) days of the date of this *Opinion and Order*.[2]

### 2. Interrogatory No. 6

Mr. Greenwald asks "whether CFAA had any business dealings with AWG prior to the purchase of Greenwald's stock and, if so, identify each and every transaction between them and whether CFAA paid money to AWG for use of its software or other products."  ECF 154-3, PAGEID#:2861.  AWG and Group 3 objected to this interrogatory, contending that it "seeks information that relates to the claims asserted in the New Jersey Action [the Greenwald Action] and is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case."  *Id*.

---

[2] In so ordering, the Court notes that, except for any discrete discovery ordered in by the Court, the discovery completion deadline remains August 1, 2015.  *See Preliminary Pretrial Order*, ECF 96, p. 2.

Mr. Greenwald argues that this information is relevant because Group 3 "knew that CFAA had been using AWG's software for over 6 months" before the Closing Date, a fact that was hidden from him. *Motion to Compel*, p. 17.  He contends that this alleged knowledge would vitiate any warranty claims and the information sought by this interrogatory is therefore relevant.  *Id*. at 17-18.  AWG and Group 3 disagree, arguing that CFAA's historical customer relationship with AWG is relevant to the Greenwald Action, but has no probative value in determining if Mr. Greenwald misrepresented that AWG owned the ARX Program.  *Memo. in Opp*., pp. 13-14.

The arguments of AWG and Group 3 are well-taken.  The Court concludes that the information sought by this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence relevant to the matters raised in the *Third Party Complaint*. Accordingly, as it relates to Interrogatory No. 6, the *Motion to Compel* is **DENIED**.

### 3.    Interrogatory No. 7

Interrogatory No. 7 asks AWG and Group 3 to identify "any and all payments, distributions, cash, compensation, and/or other consideration that Group 3 paid to Holstein from October 1, 2011 to the present, and the nature of any services he may have performed in exchange for such remuneration."  ECF 154-3, PAGEID#:2861-2862.  AWG and Group 3 objected to this interrogatory as seeking information relevant to the claims in the Greenwald Action, but not reasonably calculated to lead to the discovery of admissible evidence in this

12

case." *Id*. at PAGEID#:2862.  Mr. Greenwald insists that this information is relevant because he believes that Group 3 had a "secret" member who apparently had "a secret interest in ARX;" he also argues that the information sought by this interrogatory is relevant to the issue of damages because it would show that AWG stock has been lucrative, thus undermining claims that AWG and Group 3 received "less than they bargained for." *Motion to Compel*, p. 18.  AWG and Group 3 argue, *inter alia*, that the requested information relates only to the Greenwald Action's theory that Mr. Holstein acted as a double-agent between ARX and AWG.  *Memo. in Opp.*, p. 14.

The arguments of AWG and Group 3 are well-taken.  Mr. Greenwald has not met his initial burden of establishing that the information sought by this interrogatory is reasonably calculated to lead to the discovery of admissible evidence in connection with the specific misprepresentations/omissions expressly alleged in the *Third Party Complaint*.  As it relates to Interrogatory No. 7, the *Motion to Compel* is therefore **DENIED**.

      **4.**     **Interrogatory No. 8**

Mr. Greenwald asks AWG and Group 3 to identify "each and every untrue statement made by Greenwald or omission of material fact by him which you claim induced Group 3 to purchase his stock." ECF 154-3, PAGEID#:2862.  After objecting, AWG and Group 3 responded as follows:

> Interrogatory No. 8 seeks a narrative response that can be better discovered through other more appropriate and efficient forms of discovery.  Subject to and without waiving any objections, Defendants refer Greenwald to the Third-Party Complaint and Defendants' Answers filed in this matter which identify the untrue statement and omissions,

>> including without limitation Greenwald's statements that
>> AWG owned all the assets including intellectual property
>> for the products and software it used for AWG's business,
>> including all software and computer source code, free and
>> clear of any claims, disputes or legal proceedings; the
>> sale of AWG's stock would not breach any existing
>> agreements with any persons or entities; Greenwald was not
>> aware of any pending or threatened claims by other[s]
>> relative to AWG's assets that could affect the value or
>> ownership of the assets; AWG had not received any notice
>> from a third party claiming that AWG was violating
>> another's intellectual property rights; AWG had no
>> liabilities other than disclosed in the Stock Purchase
>> Agreement; that all AWG contracts were listed on an
>> attachment to the Stock Purchase Agreement; that Greenwald
>> identified all outstanding liabilities; and, that there
>> were no existing claims or demands made against AWG.
>> Discovery is continuing and Defendants may supplement this
>> Answer.

*Id*.

Mr. Greenwald contends that this is "a simple question, and the refusal of the G3 Parties to answer that simple question in plain English, is sanctionable." *Motion to Compel*, p. 18. *See also Reply*, pp. 2-3. This Court disagrees. AWG and Group 3 responded sufficiently to this interrogatory. Accordingly, as it relates to Interrogatory No. 8, the *Motion to Compel* is **DENIED**.

    **5.**    **Interrogatory No. 9**

Interrogatory No. 9 asks AWG and Group 3 to specify "each and every element of damage you contend you suffered as a result of any untrue statement made by Greenwald or omission of material fact by him, as well as any supporting documentation." ECF 154-3, PAGEID#:2862. After objecting, AWG and Group 3 provided the following answer:

14

> Interrogatory No. 9 seeks a narrative response that can be better discovered through other more appropriate and efficient forms of discovery.  Subject to and without waiving any objections, Defendants seek indemnification for attorney fees and costs in defending against Liang's claims and pursuing the Third-Party Complaint, indemnification for any award Plaintiff might receive for her claims, the lost value of AWG if Plaintiff prevails in this case, and lost business opportunities for AWG and Group 3 if Plaintiff prevails.  Defendants also seek attorneys fees, costs, and punitive damages as may be available under federal securities laws.

*Id*.  Mr. Greenwald explains that he "merely seeks a breakdown of damages" and that he is entitled to such information.  *Motion to Compel*, p. 18.  AWG and Group 3 disagree, contending that to the extent that Mr. Greenwald complains that that they did not specify a dollar amount, he overreaches.  *Memo. in Opp.*, p. 11.  They explain that certain damages, such as plaintiff's recovery in this action and any diminution in AWG's value if plaintiff prevails, are not currently quantifiable because they depend on the outcome of this litigation.  *Id*.  AWG and Group 3 go on to point out that one component of their damages is the total legal fees and costs incurred to defend against plaintiff's action and that they have produced all legal invoices to Mr. Greenwald.  *Id*. at 11-12.

The arguments of AWG and Group 3 are well-taken and the Court concludes that they responded sufficiently to this interrogatory.  Accordingly, as it relates to Interrogatory No. 9, the *Motion to Compel* is **DENIED**.

    **B.**    **Request for Production of Documents**

On May 13, 2015, AWG and Group 3 served their responses to Mr. Greenwald's thirty-three (33) requests for production of documents.

*See* ECF 154-3, PAGEID#:2866-2878.  Mr. Greenwald characterizes this response as insufficient because AWG and Group 3 "produc[ed] a mere 120 pages of materials that are non-responsive to the Demands, and objecting to every single demand of significance" and because they failed to produce a privilege log.  *Motion to Compel*, p. 19 (citing to, *inter alia*, "Exhibit D," attached thereto).  He goes on to complain that, other than providing him "a copy of the pleadings in the action and a bunch of redacted invoices, the G3 Parties have produced nothing."  *Id*.  Mr. Greenwald therefore asks the Court to compel AWG and Group 3 "to fully respond to the Document Demands, including the production of all electronically stored information ("ESI") in its original format with metadata, and to furnish a privilege log."  *Id*. at 19-20.  AWG and Group 3 respond that "[a] precondition to producing responsive documents is that the request seeks relevant information in the first place;" they note further that the documents produced, including their legal fee invoices, were in fact responsive.  *Memo. in Opp.*, pp. 14-15.

As this recitation demonstrates, Mr. Greenwald has wholly failed to specify the documents that each request seeks nor does he articulate the reasons why the Court should compel production as to each request.  He has likewise failed to identify which document requests are impacted by arguments of privilege.  Instead, Mr. Greenwald refers generally to "Exhibit D," which is a 13-page single-spaced copy of the responses to the requests for production buried in a 140-page filing that includes multiple other exhibits.  *See* ECF 154-

16

3 (containing Exhibits B through H). These responses address thirty-three separate document requests. *Id*. at PAGEID#:2866-2878. The *Motion to Compel* apparently invites the Court to sift through these requests and responses and formulate a basis for relevance as to each request as well as identify responses invoking privilege. The Court declines this invitation. In short, Mr. Greenwald's conclusory arguments are insufficient to meet his initial burden of establishing that the information requested is relevant to the *Third Party Complaint*. For these reasons, as it relates to the requests for production of documents, the *Motion to Compel* is **DENIED**.

    **C.    Subpoenas directed to Marc Holstein and Shiv Sangarapillai**

Mr. Greenwald seeks an order "clarify[ing] that the G3 Parties have no right to interfere with the production of all records in the possession, custody or control of" Messrs. Holstein and Sangarapillai "or to interfere with their upcoming depositions." *Motion to Compel*, p. 23. Because the deposition of Mr. Holstein did not proceed, *cf. Order*, ECF 209, as it relates to the subpoena issued to him, the request is now moot.

The Sangarapillai subpoena seeks nine categories of documents. *See supra.* Mr. Greenwald fails to explain why the requested documents are relevant to the issues presented in this litigation, nor does he otherwise identify which of these categories are in dispute. Indeed, the *Motion to Compel* is devoid of any description or discussion of the information sought by the Sangarapillai subpoena. *See Motion to Compel*, pp. 20-23. Moreover, Mr. Greenwald fails to identify the

17

nature of the objections to this subpoena, but instead vaguely asserts only that the G3 parties "have signaled their intention of also interfering with the Sangarapillai deposition on the same grounds." *Id*. at 20.  However, this ambiguous reference to an anticipated objection does nothing to clarify the nature or scope of the dispute. Based on this record, the Court cannot determine what objections to the Holstein subpoena overlap with the Sangarapillai subpoena.  In short, Mr. Greenwald has utterly failed to meet his initial burden of establishing that any of the information requested by the Sangarapillai subpoena is relevant or otherwise establish that the *Motion to Compel* in this regard is meritorious.  For these reasons, as it relates to the Holstein and Sangarapillai subpoenas, the *Motion to Compel* is **DENIED**.

**WHEREUPON**, *Third Party Defendant's Motion to Compel Discovery and for Clarification of Rights Concerning Non-Party Witness Depositions*, ECF 154, is **GRANTED in part and DENIED in part** consistent with the foregoing.

July 31, 2015

 *s/  Norah McCann King*
 Norah McCann King
 United States Magistrate Judge

18