UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HUEY JIUAN LIANG,**

    **Plaintiff,**

    v.

**AWG REMARKETING, INC., et al.,**

    **Defendants.**

Case No. 2:14-cv-00099
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants and Counterclaimants AWG Remarketing, Inc. ("AWG") and Group 3 Auctions, LLC's ("Group 3") (collectively, "Defendants") motion for summary judgment (ECF No. 120), Plaintiff Huey Jiuan Liang's memorandum in opposition (ECF No. 159), and Defendants' reply memorandum (ECF No. 167). For the reasons that follow, the Court **GRANTS** Defendants' motion with respect to Liang's claims, but **DENIES** Defendants' motion with respect to Count II of Defendants' counterclaim.

    **I.**    **BACKGROUND**

This case involves a copyright dispute over an automobile auction website. Automotive Remarketing Exchange ("ARX"), a company in the business of online software for the wholesale auction action market, purportedly owned the website and underlying computer code. ARX had four members before it dissolved: Plaintiff Liang, Counterclaim Defendant William Bonnaud, and non-parties Peter Levy and Marc Holstein.

The following facts are undisputed in this litigation. In the fall of 2010, ARX hired iUniverse, Inc. to develop its website. Edward Rezek owned iUniverse, Inc. at all times relevant.

1

Rezek previously participated in the development of a related website, bidday.com, and was able to use many of bidday.com's same features in creating the ARX website. The parties refer to the ARX website and underlying code as the "ARX Program."

At some point after Rezek created the ARX Program, ARX initiated a plan to acquire AWG. The acquisition would combine ARX's online software with AWG's database of automotive vehicles and clients. Negotiations fell through, however, and the acquisition did not go forward.

In April of 2012, ARX sued Levy and Holstein in California state court. ARX alleged that Levy and Holstein appropriated the AWG acquisition opportunity. ARX was dissolved on December 18, 2012 while the California litigation was ongoing.

After ARX was dissolved, Liang attempted to substitute herself as the plaintiff for ARX. Liang claimed that ARX assigned her its legal claims before it was dissolved. Liang testified that she signed the documents assigning ARX's legal claims to her ("Legal Assignment Documents") on December 1, 2012. During the California litigation, Liang did not indicate that she had been assigned ARX's copyrights at any time.

The California state court rejected Liang's claim. After finding Liang not credible, it noted that there existed too many holes in Liang's story that she signed the Legal Assignment Documents before ARX was dissolved. The court made the factual finding that no assignments were made from ARX to Liang prior to ARX's dissolution.

Meanwhile, in April of 2013, Liang registered several copyrights with the United States Copyright Office. The copyrights included visual ARX webpages as well as HTML computer code. Liang's registration lists ARX as the author of the copyrighted works, and herself as a

2

claimant through "Transfer: By written agreement."  (ECF No. 120-15, at PAGEID # 1960.)

Liang filed the present lawsuit in October of 2013.  This complaint names AWG and Group 3 as defendants and asserts claims for copyright infringement, contributory infringement, and removal, alteration, and/or distribution of copyright management information under the Copyright Act.  Liang alleged that she had standing to prosecute this action because she was the "successor-in-interest to ARX LLC, and hereby the exclusive holder of all of its rights, title and interest in and to ARX LLC's intellectual property including all applicable copyrights."  (ECF No. 1 ¶ 3.)

During discovery in this litigation, Liang produced for the first time documents purporting to formally assign ARX's intellectual property rights to her ("Copyright Assignment Documents").  These documents are signed by Liang and Bonnaud but not by Levy or Holstein.

Defendants requested that Liang admit that she did not sign the Copyright Assignment Documents before ARX was dissolved.  Liang, however, responded that she could "neither admit nor deny" that she "signed the document until after December 18, 2012, since I signed so many documents forwarded to me by my former attorney Eric Goodman."  (ECF No. 120, at PAGEID # 1810.)  According to Defendants, Liang's answer is purposefully vague because she seeks to maintain this lawsuit while simultaneously prosecuting a malpractice lawsuit against her former attorney.

Defendants filed a motion for summary judgment on the issue of Liang's standing on March 16, 2015.  In their motion, Defendants argue that Liang does not own the copyrights at issue such that she lacks standing to prosecute this action.

Liang requested an extension of time to respond to Defendants' motion.  Her request,

dated March 30, 2015, states that she needed additional time to find and depose Rezek, which had proved difficult despite "substantial efforts" to find him. (ECF No. 122, at PAGEID # 2019.) Liang indicated that she had "identified three possible addresses for Mr. Rezek and intends to attempt service at all three." (*Id*.) Based on Liang's representations, the Court granted her request.

Approximately two weeks later, apparently after having located Rezek, Liang and Rezek signed a Settlement Agreement and Mutual General Release ("Release") effective April 16, 2015. (ECF No. 159-2, at PAGEID # 3018–22.) The Release purports to transfer Rezek's rights in the ARX Program to Liang.

Liang subsequently responded to Defendants' motion. Liang argues that she became the owner of the copyrights at issue by virtue of the Release (dated almost two years after Liang filed her complaint in this case). Alternatively, Liang argues that she obtained a license to use the copyrighted ARX Program through Bonnaud, who (Liang claims) contributed to the ARX Program's development. Without referencing or discussing the Copyright Act's provisions regarding the formalities that must be met in order to validly assign a copyright, Liang cites a declaration from Bonnaud stating that he intended to provide an exclusive license to ARX, "though [he] did not concern [himself] with the legalities and concepts like a formal assignment." (ECF No. 159.) Other than a passing reference to the fact that she registered herself as the owner of certain copyrights, Liang does not offer any other arguments in response to Defendants' motion.

4

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251–52).

### B. Standing in Copyright Cases

Pursuant to § 501(b) of the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that

5

particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "That is, to have standing to bring suit, a party must have some ownership rights over at least part of the exclusive right for which he wishes to sue." *Screen Media Ventures, LLC v. Does 1–48*, No. 2:13-cv-845, 2013 WL 534441, at *4 (S.D. Ohio Sept. 23, 2013).

Section 201 of the Copyright Act discusses "Ownership of Copyright." Subsections (a), (b), and (d) of that section define ways in which a person or entity can own a copyright. They are:

> (a) Initial Ownership.--Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.
>
> (b) Works Made for Hire.--In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.
>
> . . .
>
> (d) Transfer of Ownership.—
>
> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.
>
> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of

> any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. §201(a)–(d).

In other words, copyright ownership can come from (1) original authorship, (2) work for hire, or (3) a valid transfer. The Court will address each of subsections (a), (b), and (d) in turn.

### 1. Authorship

The first means of ownership is not difficult or disputed. Defendants argue that Liang did not author the ARX Program. In support, Defendants point to Liang's deposition testimony stating the same. Liang does not dispute this contention. Subsection (a) of § 201 therefore is not at issue in this case.

### 2. Work For Hire

The second means of ownership is slightly more complicated, but is again undisputed in this case. Defendants argue that Rezek was not a worker for hire because he was never an employee of ARX and because, as an independent contractor, he never signed an express written agreement to perform his work for ARX and to assign all copyrights to ARX. *See* ECF No. 120, at PAGEID # 1814–15 (citing *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989) and *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093 (6th Cir. 1995)). Defendants cite Rezek's sworn testimony that he refused to sign any work for hire agreements with ARX because he needed to maintain his copyright interest in the bidday.com website (on which the ARX Program was based).

In response to this argument, Liang concedes that Rezek was an independent contractor who did not sign a written agreement to assign his intellectual property rights to ARX. Liang does not address Defendants' legal argument on this point or assert that ARX owned the copyright interests in the ARX Program pursuant to the "works made for hire" language of § 201(b). This subsection therefore is not at issue in this case.

3. *Transfer*

Liang's argument rests solely on § 201(c) and her argument that the authors of the ARX Program transferred their ownership interests to her. Section 204 of the Copyright Act governs the "[e]xecution of transfers of copyright ownership." Pursuant to §204(a), "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." The question for the Court is whether Liang received valid transfers from the purported owner(s) of the copyright interests in the ARX Program.

Liang's first argument—that Bonnaud is a contributing author to the ARX Program and granted an exclusive license to the same to ARX—fails for multiple reasons. Liang does not address § 204(a) or the fact that exclusive licenses for copyrighted material must be in writing or transferred through operation of law to be valid. Instead, Liang argues that Bonnaud intended to grant an exclusive license to ARX, and therefore, he did. Liang apparently relies on Bonnaud's statement in his declaration that he "did not concern [himself] with the legalities and concepts like a formal assignment," (ECF No.159-1, at PAGEID # 3014), to excuse him from § 204(a)'s writing requirement. Not surprisingly, Liang does not cite any authority in support of her

8

position, other than a case standing for the irrelevant proposition that "a transfer of copyright ownership need not use the words 'transfer' or assign' " in order to validly effect transfer. (ECF No. 159, at PAGEID # 3009 (quoting *Corbello v. DeVito*, 832 F. Supp. 2d 1231, 1245 (D. Nev. 2011)).)

It goes without saying that, even assuming *arguendo* that Bonnaud is an author of the ARX Program, his subjective "intention" (without more) is insufficient to grant an exclusive license to ARX. *See* 17 U.S.C. § 204(a); *Murphy v. Lazarev*, 589 F. App'x 757, 764 (6th Cir. 2014) ("A written and signed conveyance is necessary to find an exclusive license to use copyrighted material.").[1]

The Court also agrees with Defendants that, even if Bonnaud was a co-author of the ARX Program and did grant an "exclusive, perpetual, non-transferrable license" to ARX, (ECF No. 159-1, at PAGEID # 3014), that fact would be immaterial to Liang's claim of ownership. It again goes without saying that ARX could not have transferred a "non-transferrable license" to Liang. Liang does not address this point.

Having disposed of Liang's arguments regarding the purported Bonnaud transfer, the Court next addresses Liang's argument that the April 16, 2015 Release effectively transferred Rezek's rights in the ARX Program to her and "irrefutably provides her with standing." (ECF No. 159, at PAGEID # 3007.) The issue here is whether a transfer to Liang after she filed this lawsuit can retroactively cure her lack of standing.

---

[1] Liang does not make any additional arguments about Bonnaud's role in the chain of title, such as the argument that Bonnaud's relationship with ARX invoked § 201(b). The Court therefore will not consider this issue.

In support of her position, Liang cites *Intimo, Inc. v. Briefly Stated, Inc*., 948 F. Supp. 315, 317 (S.D.N.Y. 1996) and *Trebonik v. Grossman Music Corp*., 305 F. Supp. 339, 351 (N.D. Ohio 1969), neither of which are on point with the facts of this case.  In *Intimo*, it was undisputed that the plaintiff owned the relevant copyrights at the time it filed suit; the issue was whether the assignment of the copyrights included the right to sue for past infringement.  948 F. Supp. at 316–17.  The court noted that the two rights were separate, and discussed the fact that some courts have applied basic contract principles to allow an assignor of intellectual property to amend the assignment, mid-suit, in order to include the assignment of all legal claims regarding past infringement.  *See id*. at 317–18.  Liang cites the case for the direct quote that "the ability to sue for copyright infringement can be retroactively acquired," (ECF No. 159, at PAGEID # 3007);" however, that quote does not appear anywhere in the *Intimo* opinion.  In fact, that quote does not appear in any decision on Westlaw or Lexis.

*Trebonik* is even less relevant to the facts of this case.  The *Trebonik* court disposed of a standing argument in one sentence: "[t]his contention [that the plaintiff lacks standing] is without merit, since the plaintiff is the author of the [copyrighted work] and owner of its copyright."  305 F. Supp. at 351.  That case did not involve any copyright ownership issues whatsoever.

In contrast to *Intimo* and *Trebonik*, other courts have addressed the issue currently before the Court.  In *Righthaven LLC v. Democratic Underground, LLC*, No. 2:10-cv-01356, 2011 WL 2433815, at *4 (D. Nev. June 14, 2011), for example, the court distinguished *Intimo* and found that a transfer of copyright interests to the plaintiff after a lawsuit was initiated could not create standing.  The court stated: "Although a court may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves."  *Id*. (citing *Newman-*

10

*Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). *See also Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No. 8:03cv527, 2006 WL 208830, at *5 (D. Neb. Jan. 26, 2006) (distinguishing *Intimo* in a case in which the plaintiff received the assignment of copyright ownership after the litigation had begun).

The court finds the *Righthaven* decision to be well reasoned and consistent with the United States Supreme Court's, the Sixth Circuit's, and lower courts' pronouncements that standing must exist at the time a complaint is filed in order for a court to exercise subject matter jurisdiction. *See, e.g., Lujan v. Defendants of Wildlife*, 504 U.S. 555, 571 n.4 (1992) ("[T]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *Banctraining Video Sys. v. First Am. Corp.*, 956 F.2d 268, at *4 (6th Cir. 1992) (affirming dismissal of a copyright infringement case because the plaintiff failed to prove that she owned the copyrights at the time she filed the lawsuit); *accord In re Flash Memory Antitrust Lit.*, No. C07-0086, 2010 WL 2465329, at *3 (N.D. Cal. June 10, 2010) ("A party lacking Article III standing at the outset of the lawsuit has no power to prosecute the action."). As such, to determine if Liang has standing to prosecute this lawsuit, the Court examines the facts as they existed at the time Liang filed her complaint.

It is undisputed that, as of October 17, 2013—the day Liang filed her complaint—Liang had not received Rezek's copyright interests in the ARX Program. Liang therefore fails to demonstrate that she has standing to prosecute this action.

### 4. Registration

As a final note, the Court briefly addresses Liang's passing assertion that she owns the copyrights because she registered some of them with the United States Copyright Office. Liang

11

asserts that registration constitutes a "*prima facie*" showing that she has standing to pursue her claims. (ECF No. 159, at PAGEID # 3008.) Even if correct, however, a *prima facie* showing of ownership is insufficient to defeat Defendants' showing, at the summary judgment stage, that Liang does not own the copyrights. Liang apparently concedes this point as she does not offer any meaningful argument on it in her brief.

### C. Disposition of Claims

The only remaining issue for the Court is to define the claims that remain in this litigation. The Court agrees with Defendants that, given Liang's lack of standing, her claims for copyright infringement, contributory infringement, and removal, alteration and/or distribution of copyright management information cannot survive. The Court accordingly **GRANTS** Defendants' motion for summary judgment on each of Plaintiff's claims for relief.

Defendants also seek summary judgment on Count II of their counterclaim, which asks for a declaratory judgment that (1) The Liang Registrations and the Bonnaud Registration are invalid, and (2) None of Liang, Bonnaud, or John Does 1–10 owns any copyright associated with ARX. Although Defendants addressed these issues in their motion, they do not address Liang's argument in her response memorandum that she became the owner of the copyright interests in the ARX Program when Rezek transferred his ownership interests to her via the Release. A declaratory judgment that Liang currently does not own those copyright interests, therefore, would be improper. The same is true regarding Liang's argument that Bonnaud is a co-author of the ARX Program and therefore owns copyright interests in the same—Defendants do not address this argument in their reply memorandum other than to argue that it is irrelevant to

Liang's standing arguments. The Court accordingly **DENIES** Defendants' motion for summary judgment on Count II of their counterclaim.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial summary judgment on the issue of standing. (ECF No. 120.) Only Defendants' counterclaims and third-party complaint remain pending in this litigation.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE