UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HUEY JIUAN LIANG,**

    **Plaintiff,**

    v.

**AWG REMARKETING, INC., et al.,**

    **Defendants.**

Case No. 2:14-cv-00099
**JUDGE GREGORY L. FROST**
Magistrate Judge Norah McCann King

### OPINION AND ORDER

This matter is before the Court for consideration of the following filings: (1) Third-Party Defendant William Greenwald's motion for summary judgment as to the third-party complaint (ECF No. 215); (2) Third-Party Plaintiffs AWG Remarketing, Inc. and Group 3 Auctions, LLC (collectively, "Plaintiffs") response in opposition and motion for partial summary judgment on Counts I and II of the third-party complaint (ECF No. 229); (3) Greenwald's combined response in opposition to Plaintiffs' motion and reply in support of his motion (ECF No. 230); and (4) Plaintiffs' reply in support of their motion (ECF No. 237). For the reasons that follow, the Court **GRANTS** Greenwald's motion and **DENIES** Plaintiffs' motion.

    **I.**    **BACKGROUND**

This lawsuit began on October 17, 2013, when Huey Jiuan Liang filed a complaint for copyright infringement against AWG Remarketing, Inc. ("AWG"), Group 3 Auctions, LLC ("Group 3"), and Columbus Fair Auto Auction ("CFAA") (collectively, "Liang Defendants"). Liang alleged that her former company, Automotive Remarketing Exchange ("ARX"), owned the intellectual property rights associated with a website and computer code in the field of

1

wholesale automobile auctions (the "ARX Program"). Liang further alleged that AWG and ARX entered into an agreement under which AWG would use the ARX Program. According to Liang, ARX planned to acquire AWG. That acquisition did not come to fruition.

Group 3 purchased AWG instead. Liang alleged that Group 3's acquisition of AWG violated the agreement between AWG and ARX. Liang further alleged that, as a result of the acquisition, Group 3 obtained access to the ARX Program. Liang did not attach any evidence of the alleged agreement between ARX and AWG to her complaint.

Liang Defendants filed a counterclaim against Liang for abuse of process, among other claims. Liang Defendants alleged that Liang's claims are frivolous and that she pursued this litigation with the sole purpose of attempting to extract a settlement.

AWG and Group 3 also filed a third-party complaint against AWG's former majority shareholder, William Greenwald. AWG and Group 3 (collectively, "Plaintiffs") allege that Greenwald (along with AWG's minority shareholders) sold AWG to Group 3 on December 8, 2011. Plaintiffs assert that the Stock Purchase Agreement memorializing the sale ("SPA") contains several representations and warranties that Greenwald breached in this case. Specifically, Plaintiffs point to Greenwald's representations in the SPA that AWG owned the software and computer code that it used, that there were no pending claims or disputes against AWG at the time of the sale, that no party has any right to AWG's assets (defined to include AWG's intellectual property), and that "AWG has not received any notice that its operations, activities, products are services infringe the patents, trademarks, trade names, copyrights and other property rights of others." (ECF No. 101-3, at PAGEID # 4380.) Plaintiffs assert that, if Liang's allegations are true, then Greenwald breached these warranties. Plaintiffs conclude that

2

Greenwald must indemnify the costs of defending the Liang lawsuit.

On August 18, 2015, the Court granted summary judgment to Liang Defendants on all of Liang's claims. The Court found that Liang lacked standing to pursue her claims because she did not own the intellectual property rights in the ARX Program at the time she filed her complaint. The Court did not address the issue of whether ARX and/or Group 3 infringed any copyrights associated with the ARX Program. Stated differently, the Court has not made any factual findings regarding the substance of Liang's claims.

Only the third-party complaint and the abuse of process counterclaim remain pending in this litigation. The third-party complaint is the subject on this Opinion and Order. Plaintiffs assert the following claims for relief against Greenwald:

- **Count I: Breach of the SPA and Demand for Indemnity.** Plaintiffs allege that Greenwald made several warranties and representations in the SPA. Because, according to Plaintiffs, Greenwald breached those warranties and representations, he is required under the terms of the SPA to indemnify Plaintiffs for the costs of defending the Liang lawsuit. Plaintiffs' claim hinges on its argument that the Court should assume of all Liang's allegations to be true—despite Plaintiffs' repeated assertions throughout this lawsuit that they are not—in concluding that Greenwald's warranties in the SPA are false. Plaintiffs assert that Greenwald breached the SPA's indemnification provision by failing to indemnify the costs of defending the Liang lawsuit.

- **Count II: Declaratory Judgment.** Plaintiffs seek a declaratory judgment that the SPA should be interpreted to require Greenwald to indemnify Plaintiffs for the costs of defending the Liang lawsuit.

- **Counts III and IV: Violation of § 1707.41 of the Ohio Securities Act – Civil Liability of Seller for Fraud and Violation of Federal Securities Laws.** Group 3 alleges that Greenwald made untrue statements of material fact when he made the warranties and representations set forth in the SPA. These claims again hinge on Plaintiffs' assertion that the Court should assume Liang's allegations to be true in determining that Greenwald misrepresented certain facts in the SPA.

3

Plaintiffs move for summary judgment on Counts I and II of the third-party complaint. In so moving, Plaintiffs argue that Liang's allegations render Greenwald's warranties in the SPA false. Plaintiffs do not attempt to prove that Liang's allegations are true and/or that Greenwald had knowledge of Liang's allegations before the sale of AWG.

Greenwald also moves for summary judgment on all of Plaintiffs' claims. Greenwald filed a fifty-five page brief in support of his motion; however, most of the brief is taken from a related case in which Greenwald alleges that Group 3 and certain individuals fraudulently convinced Greenwald to sell AWG at an artificially-deflated price. Few of these arguments are relevant to the issues currently before the Court. As such, the Court will focus on the limited portion of Greenwald's brief that discusses Greenwald's warranties and representations, the SPA's indemnification provision, and related issues.

**II.    ANALYSIS**

*A. Standard of Review*

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251–52).

Where, as here, the parties have filed cross motions for summary judgment, "the Court grants or denies each motion for summary judgment on its own merits, applying the standards of Rule 56." *Driessen v. Woodforest Nat'l Bank*, 940 F. Supp. 2d 584, 589 (S.D. Ohio 2013) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). " 'The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as submitted for final resolution on a stipulated record.' " *Id*. (quoting *Taft Broad. Co.*, 929 F.2d at 248).

    B. *Plaintiffs' Motion for Summary Judgment on Counts I and II (Breach of the SPA and Declaratory Judgment)*

As stated above, the SPA contains certain warranties and representations. Plaintiffs highlight the following warranties and representations as being at issue in this case:

5

   (a) **Seller's Warranties and Representations.** Greenwald warrants and represents to Buyer each of the following Warranties and Representations . . . all of which shall be true as of the Closing Date:

. . .

(ii) AWG is the owner of and has absolute good and marketable title to all of the Assets [defined to include copyrights in "computer programs (including the software which is the core of AWG's business)"] which are free and clear from all liens, encumbrances and charges.

. . .

(iv) This Agreement and its performance will not breach the terms of any agreement, judgment or order of any judicial or administrative agency to which AWG is a party.

(v) There are no claims, disputes, actions, lawsuits, proceedings or to Greenwald's knowledge, investigations of any description whatsoever pending or threatened against, involving or relating to AWG, Sellers, or the Predecessors with respect to the Assets to be purchased which might prohibit or prevent the consummation of the transactions set forth herein or which might otherwise materially adversely affect the Assets or the continuing operation of the business after the Closing Date.

(vi) No party other than AWG, including the Predecessors, has any right, title or interest in or to the Assets, or any portion of them . . . AWG has no ownership in Microsoft Office or other third party software used by AWG in the ordinary course of its business.

(vii) AWG has not received any notice that its operations, activities, products and services infringe the patents, trademarks, trade names, copyrights or other property rights of others.

(ECF No. 215-12, at PAGEID # 4380.)

The SPA also contains an indemnification provision, which states:

**Hold Harmless and Indemnify**

   (a) **By Seller.** Subject to the limitations set forth below, Greenwald shall indemnify, hold harmless, protect, and defend Buyer and AWG, and their successors and assigns (collectively, "Buyer's Indemnitees") from and against any and all claims,

> demands, obligations, liabilities, damages or expense (individually a "Loss" and collectively "Losses") **which arise out of or result from a breach of Seller's warranties, representations or covenants set forth in this Agreement or which arise out of or result from (1) any act, omission or occurrence which took place prior to the Closing Date**, other than those liabilities set forth on Exhibit C or (2) any tax liability of AWG that corresponds to activities or time periods prior to the Closing Date.
>
> . . . [T]he indemnity owed by Greenwald shall be (1) for the applicable statute of limitations as to claims related to unpaid taxes, (2) indefinitely for (a) claims regarding ownership or options to acquire ownership of the Assets, and (c) claims by Greenwald's family members. All other indemnity obligations shall terminate on the eighteen (18) month anniversary of [December 8, 2011].

(ECF No. 215-12, at PAGEID # 4382–83 (emphasis added).)

Plaintiffs assert that Greenwald breached the SPA by failing to indemnify the costs of defending the Liang lawsuit. Pursuant to the SPA's indemnification provision, the first issue for the Court is whether Liang's claims "arise out of or result from a breach" of the Warranties and Representations set forth above. If not, the Court must determine whether Liang's claims "arise out of or result from" an "act, omission or occurrence which took place prior to [December 8, 2011]." Only if one or both of these provisions are satisfied does the indemnification provision apply in this case.

Plaintiffs argue that Liang's claims arise from a breach of Greenwald's warranties "because the Liang Complaint, if accepted as true, alleged facts that show Greenwald's Representations and Warranties were false." (ECF No. 229, at PAGEID # 5388.) Plaintiffs do not provide any explanation or legal support for their position that the Court must accept Liang's allegations as true. Instead, Plaintiffs cite two insurance cases and argue that a duty to defend "may exist even though the allegations are groundless, false or fraudulent" and "persists regardless of the outcome of the underlying lawsuit." (*Id.* (citing *Grange Mut. Cas. Co. v.*

7

*Rosko*, 146 Ohio App. 3d 698, 2001-Ohio-3508, ¶ 46 (Ohio Ct. App. 2001) and *Irondale Indus. Contractors, Inc., v. Va. Sur. Co.*, 754 F. Supp. 2d 927, 932 (N.D. Ohio 2010)). Plaintiffs do not substantively discuss the language used in the SPA's indemnification provision or compare that language to the cited case law.

Plaintiffs' argument is not well taken. Because the term "duty to defend" has a unique meaning in insurance cases, the cited authority is inapposite. *See, e.g., Datron, Inc. v. CRA Holdings, Inc.*, 42 F. Supp. 2d 736, 742 (W.D. Mich. 1999) ("[T]he principles informing the construction of an indemnification provision are different from those animating a duty to defend in an insurance contract."); *Rayco Mfg., Inc. v. Beard Equip. Co.*, 9th Dist. No. 11CA0057, 2014 WL 1350808, 2014-Ohio-970, at ¶ 25 (Mar. 17, 2014) (distinguishing a case involving an indemnification provision in a commercial contract from those "involving insurance companies where the insurance company has an inherent duty to defend the insured").

The Court is left to interpret the SPA's plain language. *See, e.g., Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) ("Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." (quoting *City of St. Mary's v. Auglaize Cty. Bd. of Commr's*, 115 Ohio St. 3d 387, 875 N.E.2d 561, 566 (2007))). "As indemnity provisions are construed in the same manner as other contractual agreements, 'the nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used.' " *Rayco Mfg., Inc.*, 2014-Ohio-970, at ¶ 22 (quoting *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240, 513 N.E.2d 253 (1987)).

The SPA obligates Greenwald to indemnify claims that "arise out of or result from a breach" of the Warranties and Representations. To prove that the indemnification provision has

8

been triggered, therefore, Plaintiffs must prove that there has been a breach of the Warranties and Representations. In other words, Plaintiffs must prove that the Warranties and Representations were false at the time Greenwald made them. Only then is Greenwald obligated to "indemnify, hold harmless, protect, and defend" under the indemnification provision.

Plaintiffs do not make any attempt to prove that Greenwald breached the Warranties and Representations. Instead, Plaintiffs prove only that a third party has made allegations to that effect. The parties could have structured the indemnification provision to include alleged breaches or claims that, if true, would suggest a breach of the Warranties and Representations. They likewise could have structured the provision to include any claims arising from AWG's pre-closing activities without regard to a breach by Greenwald. But the parties did not structure the indemnification provision in that way.

Because there is no evidence that Greenwald breached the Warranties and Representations, the Court cannot conclude that Liang's claims "arise out of or result from a breach" of the Warranties and Representations. The indemnification provision therefore has not been triggered in this case.

The Court also cannot conclude that Liang's claims "result from . . . any act, omission or occurrence which took place prior to the Closing Date" so as to invoke the SPA's indemnification provision. Again applying the plain meaning of this language, there must exist a proven "act, omission or occurrence which took place prior to the [December 8, 2011]" before Greenwald is required to "indemnify, hold harmless, protect, and defend." Plaintiffs' lack of evidence is again fatal to their argument.

9

Plaintiffs' argument that Greenwald promised "not only to indemnify any liabilities, but also to defend AWG and Group 3 and hold them harmless from any damages or expense," (ECF No. 229, at PAGEID # 5390), does not alter the Court's analysis.  Greenwald's obligation to "indemnify, hold harmless, protect, and defend" must be read in context with the SPA's indemnification provision as a whole.  The provision does not impose a duty to defend against claims such as Liang's unless Greenwald breached the Warranties and Representations.  Plaintiffs must prove such a breach before they can prove that Greenwald is obligated to defend.  The cases Plaintiffs cite on this point, *Battelle Memorial Institute v. Nowsco Pipeline Servs., Inc.*, 56 F. Supp. 2d 944, 950 (S.D. Ohio 1999), and *ACE European Grp. Ltd. v. Abercrombie & Fitch Co.*, Nos. 1404073, 14-4074, 2015 WL 4758156, at *1 (6th Cir. Aug. 13, 2015), do not support their position.

The Court accordingly concludes that Plaintiffs fail to meet their burden in seeking summary judgment on Counts I and II of the third-party complaint.  Plaintiffs' motion for partial summary judgment is **DENIED**.

### C. Greenwald's Cross-Motion for Summary Judgment: Counts I and II (Breach of the SPA and Declaratory Judgment)

The Court turns to Greenwald's cross motion for summary judgment on each of Plaintiffs' claims.  Greenwald argues, in relevant part, that the breach of contract and declaratory judgment claims must fail because there is no evidence of copyright infringement or claims to AWG's software prior to December 8, 2011.  Although Greenwald does not clearly explain his argument, the gist of the same is that there exists no evidence that Greenwald's Warranties and

Representations were false at the time he made them.[1]  As such, the indemnification provision was never triggered and Greenwald has not breached the SPA.

In support of this argument, Greenwald cites deposition testimony from Group 3's corporate representative Keith Whann.  Whann testified that he did not know of any facts to suggest that Liang made a claim against AWG before the closing, that Liang had a discussion with Greenwald prior to the closing, that ARX had any direct dealings with Greenwald prior to the closing, and/or that Greenwald was aware of a pending or threatened claim by anyone concerning AWG's assets at the time of the closing.

The Court notes that Plaintiffs do not dispute that there exists a lack of evidence in support of their position in this case.  Plaintiffs' position is that such evidence is not necessary to prove that the indemnification provision applies.  *See, e.g.*, ECF No. 229 (stating that the facts relevant to the Court's summary judgment determination are limited to the "existence of the SPA" and "the existence of the Liang Complaint").

Because the Court has concluded that such evidence is necessary to invoke the indemnification provision, and because Whann's testimony is affirmative proof that such evidence is lacking, the burden shifts to Plaintiffs to produce evidence that Greenwald's Warranties and Representations were false at the time he made them.  Plaintiffs fail to meet their burden.  Plaintiffs' sole argument on this point is that Liang's allegations could apply to the time period before the SPA's closing date.  As evidence in support of their position, Plaintiffs cite Liang's response to a request for admission in which she stated that she lacks sufficient information to "[a]dmit that [Liang] does not allege that Greenwald was aware that [Liang] made

---

[1] The relevant portion of Greenwald's argument can be found at ECF No. 215, at PAGEID # 4287–88.

demands on AWG that it 'refrain from exploiting the ARX Program without consent of, and payment of royalty to, [Liang],' . . . prior to December 8, 2011." (ECF No. 229, at PAGEID # 5391.)

This purported "evidence" does not create a material question of fact.  Regardless of whether Liang intended to allege that Greenwald was aware of her claims prior to December 8, 2011, such an allegation does not prove that Greenwald breached the Warranties and Representations such that the indemnification provision applies in this case.  As stated above, Plaintiffs' argument hinges on the premise that the Court should accept Liang's allegations as true for purposes of determining whether the indemnification provision applies, but there exists no legal or contractual support for this position.  Summary judgment in Greenwald's favor is warranted.

The Court accordingly **GRANTS** Greenwald's motion for summary judgment on Counts I and II of the third-party complaint.  The Court need not reach the parties' arguments about whether the SPA's statute of limitations would have barred Plaintiffs' indemnification claim.

### D. Greenwald's Motion for Summary Judgment: Counts III and IV (Violation of State and Federal Securities Laws)

Plaintiffs allege in Count III and IV of their third-party complaint that Greenwald misrepresented

> that (a) AWG held all of its assets, as defined in the Agreement, free and clear of any claims of others, (b) the sale of AWG stock to Group 3 would not violate any existing agreements with others, (c) Greenwald was not aware of any pending or threatened claims by others relative to AWG's assets that could affect the value or ownership of AWG's assets, [and] (d) AWG had not received any notice from a third-party claiming that AWG was violating nay other's or entity's intellectual property rights, and that all AWG liabilities were disclosed in the Agreement.

12

(ECF No. 33 ¶ 45.)  Plaintiffs add that

> Greenwald failed to disclose that AWG allegedly was infringing AWX LLC's alleged copyright, that AWG had received a demand from Liang to stop infringing AWX LLC's alleged copyrights, and that selling the AWG stock to Group 3 would violate an agreement between Greenwald and ARX LLC regarding use of the purported AWX Program.

(*Id.* ¶ 46.)  From these allegations, Plaintiffs allege that Greenwald engaged in fraud in violation of state and federal securities laws.

These claims fail for the same underlying reason that Counts I and II fail: there is no evidence before the Court that any of the above representations were false at the time Greenwald made them.  These claims again appear to be based on Liang's allegations that AWG infringed ARX's copyrights, which may or may not allege pre-closing infringement (Liang refused to acknowledge that her claims were limited to post-closing activities).  But there is no evidence before the Court that the alleged infringement occurred or that Greenwald had pre-closing knowledge of the same.  Those simple facts are fatal to Counts III and IV.

The Court is at an utter loss to follow Greenwald's briefs on this issue.  Rather than explain the relevant (and dispositive) argument, Greenwald attempts to prove that members of Group 3 and other individuals engaged in fraud during the sale of AWG's stock.  Greenwald argues that the third-party complaint cannot survive because two of the three members of Group 3 were also members of ARX at the time Group 3 purchased AWG.  From this fact, as well as the fact that Group 3 and ARX shared a transactional attorney at or around the time of the stock purchase, Greenwald concludes that Group 3 "knew full well that if [it] proceeded to buy AWG stock in the way [it was], Liang was going to sue them."  (ECF No. 215, at PAGEID # 4283.)  It is unclear whether Greenwald is arguing that Group 3 knew that Liang was going to sue for

13

copyright infringement or for what she perceived to be a stolen business opportunity (which she alleged in a related case in California state court).  It is equally unclear how the overlap between members of Group 3 and ARX necessitates a finding, as a matter of law, that Group 3 did not justifiably rely on Greenwald's Warranties and Representations in the SPA that AWG owned all of its assets and that Greenwald had not received notice of any claims to those assets.  Greenwald's related argument that Group 3 did not justifiably rely on his (Greenwald's) alleged omissions because Group 3 "could have easily discovered Levy's and Holstein's history with ARX" by conducting due diligence, (ECF No. 215, at PAGEID # 4284), similarly fails to explain how certain members' history with ARX means that those members knew—as a matter of law—that Liang would later claim that AWG had infringed ARX's copyrights.

These issues notwithstanding, Greenwald cites Group 3's corporate representative Keith Whann's deposition testimony in arguing that Group 3 has no evidence to support their allegations that Greenwald's Warranties and Representations were false.  *See* ECF No. 215, at PAGEID # 4287 (citing Whann Dep. II, at 99:1–105:14).  The Court finds that this portion of Whann's testimony satisfies Greenwald's burden of identifying a lack of evidence in support of Plaintiffs' fraud claims.  The burden accordingly shifts to Plaintiffs to identify material questions of fact.

Plaintiffs fail to meet their burden.  As stated in Section II(C) above, Plaintiffs do not offer any evidence that contradicts Whann's testimony.  Instead, Plaintiffs argue that Liang's unproven allegations could apply to pre-closing activity such that, if true, those allegations could show that Greenwald misrepresented certain facts.  But Liang's allegations are not evidence and therefore do not create a question of fact on this issue.

14

The Court accordingly **GRANTS** Greenwald's motion for summary judgment on these claims.  The Court need not reach the parties' remaining arguments about whether the securities claims are time barred.

### III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for partial summary judgment (ECF No. 229) and **GRANTS** Greenwald's motion for summary judgment (ECF No. 215).  Only Plaintiffs' counterclaim for abuse of process against Liang remains pending in this litigation.

As a final housekeeping matter, the Court notes that the docket reflects a pending motion for leave to supplement a motion for summary judgment.  (ECF No. 216.)  Because the Court adjudicated the underlying motion for summary judgment on August 18, 2015, the pending motion is moot.  The Clerk is **DIRECTED** to remove ECF No. 216 from the Court's pending motions list.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE