IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HUEY JIUAN LIANG,

              **Plaintiff,**

      **vs.**                                                          Civil Action 2:14-cv-0099
                                                      Judge Frost
                                                      Magistrate Judge King

AWG REMARKETING, INC., *et al.*,

              **Defendants.**

<u>**OPINION AND ORDER**</u>

    This matter is before the Court on *Defendants' (1) Motion for an Order Declaring Waiver of Plaintiff's Attorney-Client Privilege With Her Former Lawyer Eric Goodman, and (2) Motion to Compel Plaintiff to Produce Documents*, ECF 176 ("*Motion*").  Plaintiff and counterclaim defendant Huey Jiuan Liang ("Liang") opposes the *Motion to Compel*, ECF 191 & 195 ("*Opposition*"),[1] and counterclaimants and defendants AWG Remarketing, Inc. ("AWG"), Group 3 Auctions, LLC ("Group 3"), and Columbus Fair Auto Auction, Inc. ("CFAA") (collectively, "counterclaimants") have filed a reply memorandum, ECF 214 ("*Reply*"). For the reasons that follow, the *Motion* is **GRANTED in part and DENIED in part**.

---

[1] Liang's later-filed opposition, ECF 195, represents that it corrects typographical and syntactic errors contained in ECF 191, and that no substantive changes have been made in ECF 195.  *See* ECF 195, PAGEID#:3985. Counterclaimants disagree, contending that, in fact, numerous substantive changes have been made.  *See Reply*, PAGEID#:4170.  The Court notes, however, that ECF 195 was filed one day after ECF 191 and that counterclaimants have had ample time to consider and respond to ECF 195.  *See generally Reply*.  The Court will therefore consider and refer to ECF 195 when referring to the "*Opposition*" in this *Opinion and Order*.

## I.    **Relevant background**

This Court has previously set forth the relevant factual background as to Liang's allegations:

> This case involves a copyright dispute over an
> automobile auction website.  Automotive Remarketing
> Exchange ("ARX"), a company in the business of online
> software for the wholesale auction action market,
> purportedly owned the website and underlying computer code.
> ARX had four members before it dissolved: Plaintiff Liang,
> Counterclaim Defendant William Bonnaud, and non-parties
> Peter Levy and Marc Holstein.  The following facts are
> undisputed in this litigation. In the fall of 2010, ARX
> hired iUniverse, Inc. to develop its website.  Edward Rezek
> owned iUniverse, Inc. at all times relevant.  Rezek
> previously participated in the development of a related
> website, bidday.com, and was able to use many of
> bidday.com's same features in creating the ARX website. The
> parties refer to the ARX website and underlying code as the
> "ARX Program."
>
> At some point after Rezek created the ARX Program, ARX
> initiated a plan to acquire AWG. The acquisition would
> combine ARX's online software with AWG's database of
> automotive vehicles and clients. Negotiations fell through,
> however, and the acquisition did not go forward.  In April
> of 2012, ARX sued Levy and Holstein in California state
> court.  ARX alleged that Levy and Holstein appropriated the
> AWG acquisition opportunity.  ARX was dissolved on December
> 18, 2012 while the California litigation was ongoing.
>
> After ARX was dissolved, Liang attempted to substitute
> herself as the plaintiff for ARX.  Liang claimed that ARX
> assigned her its legal claims before it was dissolved.
> Liang testified that she signed the documents assigning
> ARX's legal claims to her ("Legal Assignment Documents") on
> December 1, 2012. During the California litigation, Liang
> did not indicate that she had been assigned ARX's
> copyrights at any time.
>
> The California state court rejected Liang's claim.
> After finding Liang not credible, it noted that there
> existed too many holes in Liang's story that she signed the
> Legal Assignment Documents before ARX was dissolved.  The

court made the factual finding that no assignments were
made from ARX to Liang prior to ARX's dissolution.[2]

Meanwhile, in April of 2013, Liang registered several
copyrights with the United States Copyright Office.  The
copyrights included visual ARX webpages as well as HTML
computer code.  Liang's registration lists ARX as the
author of the copyrighted works, and herself as a claimant
through "Transfer: By written agreement." (ECF No. 120-15,
at PAGEID # 1960.)

Liang filed the present lawsuit in October of 2013.
This complaint names AWG and Group 3 as defendants and
asserts claims for copyright infringement, contributory
infringement, and removal, alteration, and/or distribution
of copyright management information under the Copyright
Act. Liang alleged that she had standing to prosecute this
action because she was the "successor-in-interest to ARX
LLC, and hereby the exclusive holder of all of its rights,
title and interest in and to ARX LLC's intellectual
property including all applicable copyrights." (ECF No. 1 ¶
3.)

*Opinion and Order*, ECF 224, pp. 1-3.

On July 31, 2015, Liang filed a motion to dismiss, seeking to

voluntarily dismiss this action.  ECF 59.  After that motion had been

fully briefed, *see id*., ECF 63, 72, Liang withdrew her motion to

dismiss.  ECF 73.

On August 18, 2015, the Court, *inter alia*, specifically found it

"undisputed that, as of October 17, 2013 —- the day Liang filed her

complaint—- Liang had not received Rezek's copyright interests in the

ARX Program.  Liang therefore fails to demonstrate that she has

standing to prosecute this action."  *Id*. at 11.  Accordingly, the

---

[2] On October 23, 2014, Liang filed a malpractice suit against her former
counsel, Eric Goodman, alleging that he breached his duties to her regarding,
*inter alia*, the assignments.  *See* Exhibit A.11, ECF 176-14 (copy of
malpractice complaint).

Court granted summary judgment in favor of AWG and Group 3 as to plaintiff's claims on the issue of standing. *Id.* at 12-13.

Following that ruling, the counterclaimants' counterclaims remained pending. *See id.; Second Amended Counterclaims*, ECF 93, 94, 95 (collectively, "second amended counterclaims"). The Court later granted leave to file third amended counterclaims. *Opinion and Order*, ECF 241 (granting leave to amend counterclaims in order to dismiss, without prejudice, claims for declaratory judgment regarding copyright infringement and the validity and ownership of Liang's copyright registrations, and retaining claims for abuse of process). *See also Third Amended Counterclaims of Counterclaim-Plaintiff AWG Remarketing, Inc.*, ECF 242, PAGEID#:5652-5661 ("*AWG's Third Amended Counterclaim*"); *Third Amended Counterclaims of Counterclaim-Plaintiff Columbus Fair Auto Auction, Inc.*, ECF 242, PAGEID#:5662-5671 ("*CFAA's Third Amended Counterclaim*"); *Third Amended Counterclaims of Counterclaim-Plaintiff Group 3*, ECF 242, PAGEID#:5672-5681 ("*Group 3's Third Amended Counterclaim*") (collectively, "the third amended counterclaims" or "the abuse of process counterclaims"). The third amended counterclaims are nearly identical to the Count III abuse of process claims presented in the second amended counterclaims. *Compare, e.g.*, ECF 93, ¶¶ 72-76; ECF 94, ¶¶ 72-76; ECF 95, ¶¶ 72-76, *with* ECF 242, ¶¶ 34-38. Specifically, counterclaimants allege that Liang, at the time she initiated this action, alleged that she had probable cause to believe that counterclaimants had infringed copyrights that she owned

4

via an assignment from ARX.  *AWG's Third Amended Counterclaim*, ¶ 32.[3]
After counterclaimants' counsel advised Liang that she did not have
any valid claim to ARX's alleged copyrights and that pursuit of her
claims violated Rule 11 of the Federal Rules of Civil Procedure, Liang
allegedly sought to terminate this action.  *Id*. at ¶ 33.  When
counterclaimants asked for conditions to the dismissal in response to
Liang's request for a stipulated dismissal, counterclaimants allege,
Liang "unilaterally moved for leave to abandon her lawsuit and
voluntarily dismiss her claims."  *Id*.  Counterclaimants go on to
allege the following:

> 34.  Simultaneously, Liang directed her lawyers to cancel
> her registered copyrights with the United States Copyright
> Office ("USCO").  Liang's lawyers followed her
> instructions.  In their cancellation letter to the USCO,
> Liang's agent explained that Liang had no authorship
> interest in the registered copyrights and requested that
> all of the registered copyrights be canceled.

> 35.  As Counterclaim-Plaintiffs have maintained, Liang's
> dismissal of her claims was always the proper step because
> her claims lack any merit and because she truly has no
> valid ownership of any ARX copyrights.

> 36.  However, when Counterclaim-Plaintiffs indicated that
> they nonetheless intended to pursue their counterclaims
> and, indeed, expand the counterclaims [see Amended
> Counterclaims], Liang took a different tactic.  Rather than
> abandon claims she knew were meritless, Liang fired her
> lawyer and hired new lawyers.  Upon information and belief,
> the purpose behind Liang's firing and hiring decision was
> to manufacture claims that Liang did not control her
> terminated lawyer's actions.

> 37.  In step with that tactic, Liang's new lawyers withdrew
> her motion to voluntarily dismiss her claims.  All the
> while, Liang still has maintained with the USCO that she

---

[3] All three of the third amended counterclaims contain the same allegations.
For ease of reference, the Court will simply refer to *AWG's Third Amended
Counterclaim*.

owns no interest in the registered copyrights - the requisite foundation for her to pursue a copyright infringement case.

38.  Liang's new tactics were designed to pervert this proceeding and to accomplish the ulterior purposes of leveraging this case to extract a settlement (of claims she does not believe have merit), retaliating for missing her opportunity to purchase AWG, causing Counterclaim-Plaintiffs harm, and diverting Counterclaim-Plaintiffs' time and effort from their business ventures - purposes for which this proceeding was not designed.  Liang's perversion of this proceeding may also be motivated by her perception that Counterclaim-Plaintiffs have some influence over the California Lawsuit defendants - a lawsuit Liang lost - and those defendants' willingness to settle.

*Id*. at ¶¶ 34-38.

## II.  Standard

Counterclaimants now move for an order declaring waiver of Liang's attorney-client privilege with Attorney Goodman and for an order compelling Liang to produce certain documents.  *See Motion*. Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when, *inter alia*, a party fails to provide a proper response to a request for production of documents under Rule 34.  Fed. R. Civ. Pro. 37(a)(3)(B).  "The 'proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.'"  *O'Malley v. NaphCare Inc*., No. 3:12-CV-326, 2015 WL 6180234, at *2 (S.D. Ohio Oct. 21, 2015) (quoting *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 4052873, at *3 (S.D.Ohio Aug. 12, 2013)).

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

6

claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). *See also Lewis*, 135 F.3d at 402 (determining the proper scope of discovery falls within the broad discretion of the trial court). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg. Inc.*, No. 08-1301, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

In the case presently before the Court, the parties disagree whether the Court's *Opinion and Order*, ECF 224, granting summary judgment on Liang's claims on the issue of standing, moots the *Motion*. Counterclaimants contend that the *Motion* remains viable because the requested information is material to their abuse of process counterclaims. *See, e.g., Motion; Reply; Defendants' Status Report Regarding Docket Numbers 176 and 219 [Dkt. No. 226]*, ECF 232, pp. 1-2.

7

Liang, however, argues that the *Motion* is now moot because it seeks information that is irrelevant to the abuse of process counterclaims, *i.e.*, information related to the issue of standing and communications that preceded the abuse of process claim. *Plaintiff's Report*, ECF 233.

This Court concludes that the requested information is relevant to the allegations underlying the abuse of process counterclaims, *e.g.*, that Liang attempted to manufacture standing during the course of this litigation, that she continued to pursue this action when she knew that she did not own the copyrights, and that she knew that she lacked evidence of infringement. *See supra*. The Court therefore concludes that the Court's prior decision granting summary judgment on Liang's claims does not moot the pending *Motion*.

In addition, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. Similarly, Local Rule 37.1 provides that discovery related motions "shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." S.D. Ohio Civ. R. 37.1.

Here, the parties disagree whether counterclaimants exhausted all extrajudicial efforts before filing their *Motion*. *See*, *e.g.*, *Motion to Compel*, PAGEID#:3396-3397; *Opposition*, PAGEID#:3998-3999, 4001-

8

4005; *Reply*, PAGEID#:4169-4171. The parties also accuse each other's counsel of providing false testimony in their declarations. *See*, *e.g.*, *Opposition*, PAGEID#:4003 (citing *First Forry Declaration*, ¶ 10; *Reply*, PAGEID#:4170 (citing *Declaration of Paul N. Tauger*, ECF 191-1, ¶¶ 4-5) ("*Tauger Declaration*")). After reviewing the record and considering the arguments of the parties, the Court concludes that the parties have reached impasse on the matters raised in the *Motion* and that, under the circumstances, counterclaimants have sufficiently met the requirements of Local Rule 37.1. *See*, *e.g.*, *First Forry Declaration*, ¶¶ 10-11, 14-16; Exhibits A.8, A.9, A.12, A.13, A.14, attached thereto; *Declaration of Steven D. Forry*, ECF 214-1, ¶¶ 3-5 ("*Second Forry Declaration*"); Exhibits A.1, A.2, A.3, A.4, A.5, A.6, A.7, A.8 attached thereto. Accordingly, Liang's request for sanctions based on counterclaimants' alleged failure to comply with Local Rule 37.1 is not well-taken.

## III. Waiver and Emails Identified in Privilege Log

Counterclaimants argue that Liang has waived the attorney-client privilege that may otherwise protect her communications with her former counsel; counterclaimants argue that she must therefore produce certain email communications identified on her privilege log ("the emails" and "privilege log") or provide them to the Court for an *in camera* review. *Motion*, PAGEID#:3386-3395, 3398; *First Forry Declaration* ¶ 12; Exhibit A.10, attached thereto (copy of privilege log modified to affix a number to each listed email). In response to Liang's first request for production of documents, Liang produced,

9

*inter alia*, the privilege log, identifying the attorney client privilege with Attorney Goodman as a basis for withholding many emails.  *See* Exhibit A.10, ECF 176-13 (modified by counterclaimants to include a left-hand column numbering each withheld document). According to counterclaimants, Liang's waiver of the privilege implicates three time periods:

| | |
|---|---|
| 9/1/12 – 12/31/12: | this is the time period during which Liang has testified (here and in the California Case) that she and Bonnaud met with Goodman and voted to assign the Copyrights from ARX to Liang, and through the end of December 2012 is the period during which Liang has claimed the ARX Assignment documents were signed (she cannot recall when she signed the Assignments in December). |
| 2/22/13 – 5/31/14: | this is the period spanning the dispute in the California Case regarding the validity of the Assignments.  The California Case defendants first raised the issue in early March 2013, which led to repeated productions of supposed Assignment documents up until the date of the California Case trial in May 2014.  Because Liang produced new and separate Assignment documents throughout this period, the entire period is relevant here. |
| 6/1/14 – 7/31/14: | this is the period surrounding Liang's voluntary dismissal of this lawsuit and attempted cancellation of the Copyrights because she had no legal interest in them. |

*Motion*, PAGEID#:3394.  Counterclaimants argue that, correlating these time periods to the emails on the privilege log, Liang must produce

10

the following numbered emails:  2-8, 11-52, 60-86, 88-90, 94-129, 131-37, 139-49, 151-54, 159-62.  *Id.*

The parties agree that it is federal common law that applies to this question of privilege.  *See Opposition*, PAGEID#:3990; *Reply*, PAGEID#:4173. This Court agrees. Plaintiff instituted this litigation as a copyright action, 17 U.S.C. § 101 *et seq.*, invoking subject matter jurisdiction under §§ 1331, 1338.  *See Complaint*, ECF 1, ¶ 1. In federal question cases, "[q]uestions of privilege are to be determined by federal common law[.]"  *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).  As the party seeking protection, Liang bears the burden of establishing the existence of the attorney client privilege as well as non-waiver of that privilege.  *See*, *e.g.*, *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *In re OM Sec. Litig.*, 226 F.R.D. 579, 590 (N.D. Ohio 2005).  A waiver of the privilege may arise in different ways.  For example, "[t]he attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *Dakota*, 197 F.3d at 825. "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) ().  *See also* Fed. R. Evid. 502(a) (providing that waiver extends to an undisclosed communication only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered

together"). In determining the scope of the same "subject matter," courts are directed to "try to make prudential distinctions between what was revealed and what remains privileged." *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996) (reversing and remanding district court's decision permitting questions regarding an attorney's advice on an entire marketing plan where the attorney's advice concerning only one element of the marketing plan was disclosed to third parties, and directing that the district court "will have to decide whether the remaining points in the marketing plan are truly the same subject matter as those in the specific marketing plan points on which there was a waiver and approve or disallow questions on that basis"). "Realizing that fairness is at the heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly." *United States v. Skeddle*, 989 F. Supp. 905, 909 n.2 (N.D. Ohio 1997) (collecting cases).

In addition, "courts have held that . . . a failure to object to deposition questions or testimony on grounds of attorney-client privilege operates to waive a claim of privilege as to this testimony." *Cason-Merenda v. VHS of Michigan, Inc.*, No. 06-15601, 2013 WL 5449159, at *3 (E.D. Mich. Sept. 30, 2013) (citing *Donaggio v. Arlington County*, 880 F. Supp. 446, 451 n. 5 (E.D. Va. 1995) (collecting cases)). *See also Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("A client waives the attorney-client privilege, however, by failing to assert it when confidential information is

sought in legal proceedings."); 8 Charles Alan Wright, Arthur R.
Miller & Edward H. Cooper, Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.)
("Failure to assert the privilege objection correctly can mean that
the privilege is waived. . . . In the deposition context, as at
trial, the objection should ordinarily be asserted when a question
seeking privileged material is asked[.]"). In this context, simply
identifying the general subject matter of the communication will not
serve to waive the attorney-client privilege. *See*, *e.g.*, *Denman v.
Youngstown State Univ.*, No. 4:05CV1910, 2007 WL 2781351, at *3 (N.D.
Ohio Sept. 21, 2007) (citing, *inter alia*, *Nguyen*, 197 F.3d at 206).
"Assertion of the privilege is only required when there is inquiry
into the actual substance of the communications such as the client's
specific request to the attorney and pertinent information including
the research undertaken by counsel to respond to the client's
request." *Id.* (citing *Nguyen*, 197 F.3d at 206).

### A. Waiver of privilege as to cancellation of copyrights and Liang's attempt to voluntarily dismiss this action

In the case presently before the Court, the parties disagree
whether Liang waived the attorney client privilege as to the
cancellation of her copyrights and her attempted voluntary dismissal
of this litigation. *Motion*, PAGEID#:3388-3390; *Opposition*,
PAGEID#:3991-3998; *Reply*, PAGEID#:4176-4179. In addressing this
issue, the parties filed and relied upon excerpts of Liang's
deposition. *See* Exhibit A.7, ECF 176-10 (filed by counterclaimants);
Exhibit B, ECF 191-3 (filed by Liang). *See also Videotaped Deposition
of Huey Jiuan Liang*, ECF 135-1, PAGEID#:2352-2510 ("*Liang*

13

*Deposition*"). Counterclaimants deposed Liang on February 26, 2015. During the course of that deposition, and without objection, counterclaimants examined Liang regarding her conversations with Attorney Goodman on the issue of cancelling her copyrights and the attempted voluntary dismissal of this litigation:

> Q:   Okay.  To be clear, did you ever ask Eric Goodman to cancel your copyrights with the Copyright Office?
>
> A:   No.

*Liang Deposition*, 145:7-10.

> Q:   Did the new lawyer tell you about this dismissal document [deposition Exhibit 12] before you hired the new lawyer?
>
> MS. MILLER:  Please only answer that question yes or no. if you can't remember, tell him you can't remember.
>
> A:   I don't remember.  Because when I hired the new lawyer, he told me you'll dismiss your case and you cannot sue him again.
>
> MR. FORRY:  You were right.  I think they wanted to object to what she was saying, which is fine.
>
> MS. MILLER:  Right.  I'm okay with you talking about conversations with your previous counsel, Goodman, but we don't talk about conversations that we've had with your new counsel.  So that's why I say when he asks you when you learned about that [deposition Exhibit 12, described as a "dismissal document"], yes or no, but don't talk about what we've said to you.

*Id*. at 148:6-24.

> Q:   My question is a little bit different.  Let's just agree that today you're saying you did not want to cancel the copyrights.  My question is:  Did you speak about it with Mr. Goodman?
>
> A:   I had spoken with Mr. Goodman, but I didn't say to cancel it.

14

Q:   The conversation you had with him, was that around the same time as July of 2014?

A:   Perhaps, but I'm not certain.

Q:   Whose idea was it to have a conversation about canceling the copyrights?

A:   Eric Goodman.

Q:   Did he tell you why he thought that would be a good idea?

A:   He said my state court -- he said my state court case didn't win, that's why I need to cancel, but I didn't agree.

Q:   In that conversation where you were talking about cancellation of your copyrights, did you also talk about dismissing this lawsuit?

A:   Then I'm not certain what we talked about because I didn't even know what he was doing.

Q:   Well, you know that you talked about canceling the copyrights.  Even if you didn't agree to do that, you talked about it, right?

A:   Right.

Q:   So is it possible that in those same conversations you also talked about dismissing this lawsuit even if you didn't agree to do it?

A:   I didn't want to cancel it.  I'm really puzzled.  I didn't know what he was doing at that time.  I was really confused by him.  I don't know what he was doing.

*Id*. at 150:22-152:7.

Counterclaimants argue that Liang, by virtue of this testimony, voluntarily revealed the content of her communications with Attorney Goodman and accepted her current counsel's instructions to disclose her discussions with Attorney Goodman.  *Motion*, PAGEID#:3388-3390; *Reply*, PAGEID#:4176-4179.  Counterclaimants therefore take the

position that Liang has waived the attorney client privilege regarding the cancellation of her copyrights and her attempt to voluntarily dismiss this action. *Id.* Liang disagrees, arguing that she did not waive the privilege as to these issues because her testimony provided only a general description of the subject matter, which disclosed no substantive content, and that the disclosed and undisclosed communications or information do not concern the same subject matter. *Opposition*, PAGEID#:3392-3397.[4]

In considering the relevant deposition testimony and the arguments of the parties, the Court first concludes that Liang has waived the attorney client privilege as to the cancellation of the copyrights. In addressing why Attorney Goodman thought canceling the copyrights was a good idea, Liang specifically testified, "He said my state court – he said my state court case didn't win, that's why I need to cancel, but I didn't agree." *Liang Deposition*, 151:12-14. This testimony is not simply "a single, mangled, and incomplete sentence" that is "incomprehensible" and that provides only a general description of a privileged communication. Rather, Liang expressly testified about the substance of her communication with Attorney Goodman. More specifically, the cited testimony discloses Attorney Goodman's strategy and reasoning for cancelling the copyrights: He advised plaintiff that the copyrights must be canceled because she did

---

[4] Liang also contends that her deposition transcript is "invalid" and "inadmissible," as argued in her motion to strike that deposition, precluding it as a basis for waiver. *Id*. at PAGEID#:3991. However, this argument is now moot in light of the Court's prior ruling denying the motion to strike Liang's deposition. *Order*, ECF 205.

not prevail in the California litigation.  Accordingly, the Court concludes that Liang's testimony constitutes a voluntary disclosure of Attorney Goodman's counsel and advice to a third party, thereby resulting in a waiver of the attorney client privilege as to the cancellation of the copyrights.  *See*, *Dakota*, 197 F.3d at 825.

The Court is not persuaded, however, that Liang waived the attorney client privilege as to the voluntary dismissal of this lawsuit.  Counterclaimants contend that Liang waived any privilege when her counsel stated that she was "okay with you [Liang] talking about conversations with your previous counsel, Goodman" and when plaintiff failed to object to this instruction.  *Liang Deposition*, 148:18-20.  Read in its proper context, however, this instruction and testimony did not serve to waive the attorney client privilege as to the voluntary dismissal of this lawsuit.  Liang's counsel clarified "that's why I say when he asks you when you learned about that [deposition Exhibit 12, described as a "dismissal document"], yes or no, but don't talk about what we've said to you."  *Id*. at 148:22-24.  In other words, Liang's counsel permitted her to testify only as to the date on which Liang learned of a dismissal document.  This Court will not inflate this narrow testimony into a waiver as to all communications with Attorney Goodman on the subject of the voluntary dismissal of this action.  *See*, *e.g.*, *In re Grand Jury Proceedings*, 78 F.3d at 255-56; *Skeddle*, 989 F. Supp. at 909 n.2.  Although counsel for counterclaimants later asked if it was possible that Liang "talked about dismissing this lawsuit" in the same conversations with Attorney

17

Goodman as the copyright cancellation discussions, Liang simply testified that she "did not want to cancel it" and she did not know what Attorney Goodman was doing. *Id.* at 152:1-7. Again, this testimony does not reveal actual substance of Liang's communications with Attorney Goodman and therefore does not operate as a waiver of the privilege. *See*, *e.g.*, *Denman*, 2007 WL 2781351, at *3.

In short, as it relates to a waiver of the attorney client privilege in connection with the cancellation of the copyrights, the *Motion* is **GRANTED;** as it relates to a waiver of the attorney client privilege in connection with the voluntary dismissal of this lawsuit, the *Motion* is **DENIED**. Liang is **ORDERED** to produce, within fourteen (14) days of the date of this *Opinion and Order*, all email communications identified in the privilege log regarding cancellation of the copyrights.

**B. Waiver of privilege as to assignments of copyrights**

Counterclaimants contend that a decision in the California litigation ("the California judgment") finding that she had waived the attorney client privilege collaterally estops her from now arguing that she did not waive the privilege as to the assignments. *Motion*, PAGEID#:3391-3393; *Reply*, PAGEID#:4175-4176. "'State-court judgments are given the same preclusive effect under the doctrines of res judicata and collateral estoppel as they would receive in courts of the rendering state.'" *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015) (quoting *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011)). Stated differently, "'[i]f an

18

individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.'" *Id.* (quoting *Boggs*, 655 F.3d at 519).  A federal court looks to the state's law to determine what preclusive effect, if any, attaches to that judgment. *Id.* (quoting *Boggs*, 655 F.3d at 519).

In the case presently before the Court, counterclaimants allege that the California judgment estops plaintiff from arguing that the attorney client privilege protects her communications with Attorney Goodman (or with any lawyer) regarding the creation of the alleged assignments from ARX to Liang.  Under California law, a party asserting collateral estoppel bears the burden of satisfying five requirements:

> Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd*. (1962) 58 Cal.2d 601, 604, 25 Cal.Rptr. 559, 375 P.2d 439.)  Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. (*Sims, supra*, 32 Cal.3d at p. 484, 186 Cal.Rptr. 77, 651 P.2d 321; People v. Taylor (1974) 12 Cal.3d 686, 691, 117 Cal.Rptr. 70, 527 P.2d 622.)

*Lucido v. Superior Court*, 51 Cal.3d 335, 341 (Cal. 1990).  The party asserting collateral estoppel bears the burden of establishing these five requirements. *Id*.

Even if the asserting party satisfies all of these requirements, a court must consider the public policies underlying collateral estoppel before applying that doctrine.  *Id*. at 342-43; *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 879 (2010).  "Those policies include conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation." *Murray*, 50 Cal. 4th at 879.

In addition, "[c]ollateral estoppel may be applied only if due process requirements are satisfied." *Murphy v. Murphy*, 164 Cal. App. 4th 376, 404 (2008) (internal quotation marks and citations omitted), *as modified on denial of reh'g* (July 22, 2008).  "[W]here the party to be estopped was a party who participated in the earlier proceeding, due process requires that this party must have had an adequate incentive to fully litigate the issue in the prior proceeding, and must have had a fair opportunity to pursue his claim the first time[.]" *Id*. (internal citations omitted).  *See also Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978) ("[T]his requirement of identity of parties or privity is a requirement of due process of law.").

Finally, "the offensive use of collateral estoppel is more closely scrutinized than the defensive use of the doctrine." *White Motor Corp. v. Teresinski*, 214 Cal. App. 3d 754, 763 (Ct. App. 1989). Trial courts have broad discretion in determining whether to apply

20

offensive collateral estoppel. *See*, *e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

In the California litigation, Liang – claiming to be an assignee of cancelled limited liability companies - pursued claims of breach of fiduciary duty and breach of the corporate opportunity doctrine. Exhibit A.3, ECF 176-6, PAGEID#:3421 ("California judgment"). In support of those claims, Attorney Goodman filed a sworn declaration, averring that, on December 1, 2012, he prepared an assignment of legal claims, which assigned to Liang all of ARX's claims. *See* Exhibit A.1, Exhibit 176-2, ¶ 3 ("*Goodman Declaration*"). Liang and Mr. Bonnaud also filed sworn declarations in the California litigation, averring they had assigned ARX's rights to Liang on December 1, 2012. *See* Exhibit A.2 (copies of the declarations). On August 7, 2014, the California court considered these declarations in addressing Liang's claims as the purported assignee of the cancelled limited liability companies:

> Regarding the alleged assignments, on all the available evidence and all reasonable inferences to be drawn therefrom, it is clear that no oral or written assignment of claims occurred before the LLCs were canceled. . . .
>
> The Court also considers Evidence Code § 412, which provides that, "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfying evidence, the evidence offered should be viewed with distrust. By the simple expedient of providing metadata for the documents in question, Plaintiff could conclusively have put to rest the dispute about their date of creation. Instead, notwithstanding that the Plaintiff was well aware of Defendants' pointed attacks on the provenance of these documents, Plaintiff elected to rely solely on the wholly unreliable record, including contradictory testimony under oath. The Court rejects any contention that the metadata

is protected by the attorney-client privilege.  Plaintiff's
attorney Mr. Goodman provided a sworn declaration to the
Court testifying as to the creation of these documents.
The moment he did so, any attorney-client privilege
specifically pertaining to the creation of those documents
was waived.

At bottom, the only reasonable explanation for the myriad
inconsistencies and blatant contradictions is that no
assignments, oral or written, had been made prior to the
cancellation of the LLCs.

Exhibit A.3, ECF 176-6, PAGEID#:3427-3428.  The California court

entered judgment in favor of the defendants and against, *inter alios*,

Liang.  *Id*. at PAGEID#:3434-3435.  Liang appealed the California

judgment, but did not address the issue of privilege or waiver on

appeal.  *See generally* Exhibit A.4, ECF 176-7 (copy of Liang's

appellate brief).

Counterclaimants now argue that the "question of privilege is the

same question presented here[,]" that "[t]he issue was fully and

finally litigated, necessarily decided in a final Judgment on the

merits, and Liang was the party opposing waiver in the California Case

just as she does here."  *Motion*, PAGEID#:3392.  They specifically

argue that the requirements of due process have been satisfied because

"Liang had every incentive to vigorously litigate the waiver issue in

the California Case and a complete pre-trial, trial, and post-trial

opportunity to do so."  *Id*. at PAGEID#:3393.  The counterclaimants go

on to argue that the application of collateral estoppel here would

also serve underlying public policies.  *Id*.  Liang disagrees, arguing

that the issue of attorney client privilege was never before the

California court, which instead addressed Liang's "former counsel's

22

failure to introduce evidence that could have been, <u>but was not</u>, produced." *Opposition*, PAGEID#:3994 (emphasis in original).  Liang also argues that Attorney Goodman's declaration did not constitute a waiver of the attorney-client privilege because that privilege belongs to Liang and was never intentionally waived by her.  *Id*. at PAGEID#:3395. Counterclaimants, however, insist that the issue is the same, namely, waiver of the attorney client privilege.  *Reply*, PAGEID#:4175-4176.  This Court disagrees.

"[W]here the previous decision rests on a 'different factual and legal foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied." *Johnson v. GlaxoSmithKline, Inc*., 166 Cal. App. 4th 1497, 1513 (2008) (citations omitted), *as modified on denial of reh'g* (Oct. 14, 2008).  "Precisely defining the issue previously decided and the one sought to be precluded is critical." *Id*.  In the California litigation, the court considered the sufficiency of the evidence, *i.e.*, the *Goodman Declaration* and the absence of metadata underlying the assignment documents, when considering the merits of Liang's claims.  *See supra*. Although not detailed in the California judgment, Liang, in that context, apparently refused to produce the metadata based on a belief that the attorney client privilege protected that information, a contention that the California court ultimately rejected.  *Id*.  Based on this limited record, this Court cannot say that the issue presented to and resolved in the California litigation and the issue of waiver of the attorney client privilege in this case are identical.  The

23

decision by the California court rested on a "different factual and legal foundation," *Johnson*, 166 Cal. App. 4th at 1513, than the issue before this Court. The California court apparently found a waiver of the attorney client privilege because Attorney Goodman averred that he had prepared an assignment of claims for ARX and Liang on December 12, 2012, and did not produce metadata underlying the assignment documents. *Goodman Declaration*, ¶ 3; Exhibit A.3, ECF 176-6, PAGEID#:3427-3428. As discussed *supra*, however, under federal common law, "[a]ssertion of the privilege is only required when there is inquiry into the actual substance of the communications such as the client's specific request to the attorney and pertinent information including the research undertaken by counsel to respond to the client's request." *Denman v. Youngstown State Univ.*, No. 4:05CV1910, 2007 WL 2781351, at *3 (N.D. Ohio Sept. 21, 2007). Counterclaimants, who have the burden of establishing collateral estoppel, *see Lucido*, 51 Cal.3d at 341, have not shown that Liang's failure to object to the *Goodman Declaration* in this regard resulted in a waiver of the privilege under federal common law. *Cf. Id.*; *Johnson*, 166 Cal. App. 4th at 1513.

Even if the issues presented in the two lawsuits were identical, counterclaimants have not shown that the due process requirements of the analysis have been satisfied. *See Murphy*, 164 Cal. App. 4th at 404. As discussed in more detail above, the party to be estopped "must[, *inter alia*,] have had an adequate incentive to fully litigate the issue in the prior proceeding[.]" *Id*. Liang correctly points out

that the question of waiver of the attorney client privilege was never expressly presented to the California court. The issue actually before that court was the insufficiency of the evidence, *i.e.,* Liang's failure to produce metadata underlying the assignment documents. In this context, this Court cannot say that Liang had a sufficient incentive to litigate the issue of waiver of the attorney client privilege in the California litigation. Under these circumstances, the Court concludes that its discretion is better exercised by declining to apply the doctrine of collateral estoppel against Liang. *See Parklane Hosiery Co.*, 439 U.S. at 331; *White Motor Corp.*, 214 Cal. App. 3d at 763. As it relates to a waiver of the attorney client privilege in connection with the assignments of the copyright documents, the *Motion* is **DENIED**.

IV.  **Requests for Production of Documents**

    In their *Motion*, counterclaimants seek an order compelling Liang to produce documents responsive to several requests for production of documents. *See Motion*, PAGEID#:3395-3397. In their *Reply*, however, counterclaimants ask for an order precluding Liang from using the requested documents because the deadline for completing discovery has now passed. *Reply*, PAGEID#:4173, 4179-4180. The *Reply* in this regard is not well-taken. The dispute regarding the sufficiency of Liang's responses to the requests for production of documents arose prior to the close of discovery and the *Motion* was not even fully briefed until after the discovery completion deadline. *See Reply*. Accordingly, nothing about the close of discovery warrants the preclusion order

25

that counterclaimants seek.  The Court will therefore consider the sufficiency of Liang's responses to the requests for production of documents.

### A. Liang's responses to AWG's first request for production of documents

On May 21, 2014, Liang served her responses to AWG's first request for production of documents.  ECF 176-15 (excerpt of Liang's responses to the requests) (collectively, "2014 Requests" and "2014 Responses"; individually, "Request No. __").  In relevant part, the 2014 Requests sought the following information:

> **REQUEST FOR PRODUCTION NO. 39:**
>
> All documents supporting Your claim that CFAA infringed Your copyrights or contributed to or induced the infringement of same.

*Id.* at PAGEID#:3544 (emphasis in the original).

> **REQUEST FOR PRODUCTION NO. 40:**
>
> All documents supporting Your claim that Group 3 infringed Your copyrights or contributed to or induced the infringement of same.

*Id.* at PAGEID#:3545 (emphasis in the original).

In response to these requests, Liang asserted several objections but went on to state that "[s]ubject to and without waiving the foregoing objections, Responding Party will produce relevant, non-privileged documents that are responsive to this request as they become available."  *Id.* at PAGEID#:3545.  However, Liang has apparently never produced any documents responsive to these requests. *First Forry Declaration*, ¶ 14.  In opposing the *Motion*, Liang explains

26

that she could not respond to these requests until counterclaimants had responded to Liang's discovery, which counterclaimants refused to do. *Opposition*, PAGEID#:3999; *Tauger Declaration*, ¶ 5(c). However, one party's purported refusal to comply with discovery requests does not justify the other party's refusal to respond discovery requests. Based on the present record, as it relates to responses to 2014 Request Nos. 39 and 40, the *Motion* is **GRANTED**. Liang is **ORDERED** to provide, within fourteen (14) days of the date of this *Opinion and Order*, all documents responsive to these requests. Liang is **FURTHER ORDERED** to provide a declaration or affidavit confirming either that she has produced all responsive documents or that she has no responsive documents to produce.

**B. Liang's responses to Group 3's first request for production of documents**

On June 22, 2015, Liang responded to Group 3's first request for production of documents. ECF 176-16 (excerpt Liang's responses to requests) (collectively, "2015 Requests" and "2015 Responses"; individually, "Request No. ___"). Counterclaimants seek to compel responses to four of these responses. *Motion*, PAGEID#:3396-3397.

**1. Request No. 2**

Counterclaimants seek "[a]ll documents demonstrating how You claim any/each of (a) Group 3, (b) CFAA, and/or (c) AWG infringed any copyrights over which You claim ownership." ECF 176-16, PAGEID#:3552. Liang refused to produce any documents:

RESPONSE: Plaintiff incorporates its general objections as if fully set forth herein. Plaintiff further objects on the ground that the phrase, "demonstrating how

You claim [the defendants] infringed" is vague, ambiguous and, for all intents and purposes, renders this Request incomprehensible.  Plaintiff will not produce documents in response to this request.

*Id.*  In opposing the *Motion*, Liang stands by her objections, arguing further that it is unclear what counterclaimants mean by "any copyrights" in this request.  *Opposition*, PAGEID#:4000.

Counterclaimants counter that her explanation as to why this request is incomprehensible is itself incomprehensible and sheds no light on Liang's inability to understand Request No. 2.  *Reply*, PAGEID#:4172-4173.  They go on to argue that this request is no more ambiguous than the allegations in Liang's own complaint.  *Id.* at PAGEID#:4173.

Counterclaimants' arguments are well-taken.  Liang has failed to show that the phrase "demonstrating how You claim [the defendants] infringed" is incomprehensible.  Indeed, Liang has alleged that counterclaimants infringed upon her rights to the ARX Program. *See*, *e.g.*, *Complaint*, ¶¶ 27, 30-40.  Liang's new argument – *i.e.,* that the term "copyrights" is ambiguous - is likewise unavailing.  Again, Liang used that very term in her own *Complaint*. *See*, *e.g.*, *Complaint*, ¶¶ 3, 31, *Prayer for Relief* (seeking judgment, *inter alia*, "[t]hat Defendants each be held to have infringed Plaintiff's copyrights in its ARX Program").  As it relates to Request No. 2, the *Motion* is **GRANTED**.  Liang is **ORDERED** to provide, within fourteen (14) days of the date of this *Opinion and Order*, all documents responsive to this request.  Liang is **FURTHER ORDERED** to provide a declaration or affidavit confirming either that she has produced all responsive

documents or that she has no responsive documents to produce.

### 2.    Request No. 3

Counterclaimants seek "[a]ll documents reflecting any copying that You allege any/each of (a) Group 3, (b) CFAA, and/or (c) AWG performed relative to copyrights over which You claim ownership." ECF 17-16, PAGEID#:3552. Liang objected to this request and refused to produce any documents:

> RESPONSE:  Plaintiff incorporates its general objections as if fully set forth herein.  Plaintiff further objects on the ground that the phrase, "reflecting any copying" is vague, ambiguous and, for all intents and purposes, renders this Request incomprehensible.  Plaintiff will not produce documents in response to this request.

*Id*. In her *Opposition*, Liang insists that the phrase "reflecting any copying" is incomprehensible because "[a]s a matter of law, 'copying' computer software occurs in a variety of contexts" and that, *inter alia*, counterclaimants' internet customers engage in copying simply by visiting counterclaimants' websites that use Liang's software. *Opposition*, PAGEID#:4001-4002.  She goes on to argue that documents "reflecting" copying therefore "include virtually anything and everything related to the conduct of" counterclaimants' business. *Id*. at PAGEID#:4002.  Liang also argues that counterclaimants simply could have requested documents that "YOU contend establish or evidence Defendants' violation of YOUR reproduction right," but they did not and Liang is not required to guess counterclaimants' meaning.  *Id*. Counterclaimants disagree, contending that Liang's explanation is incomprehensible and arguing that the request is no more ambiguous than the allegations in the *Complaint*.  *Reply*, PAGEID#:4172-4173.

29

Liang's arguments are well-taken.  The phrase "reflecting any copying" is vague and can have multiple meanings, leaving not only Liang, but also this Court, to speculate as to the documents requested and the scope of the request.  *See*, *e.g.*, *Perry v. Randstad Gen. Partner (US) LLC*, No. 14-CV-11240, 2015 WL 2169847, at *3 (E.D. Mich. May 8, 2015) ("The Defendant and the Court should not have to engage in speculation in order to decipher the substance of the inquiry for purposes of formulating a response.").  Accordingly, as it relates to Request No. 3, the *Motion* is **DENIED**.

### 3.    Request Nos. 8 and 9

Counterclaimants previously requested "[a]ll documents evidencing any loan agreements entered into between Liang and ARX" and "[a]ll documents evidencing any security agreements entered into between Liang and ARX relative to Liang's loans to ARX." ECF 176-16, PAGEID#:3553-3554.  In response to these requests, Liang incorporated her general objections.  *Id.* at PAGEID#:3554.  Liang now acknowledges that "[t]here is nothing wrong with these requests" and she represents that she has produced documents responsive to these requests. *Opposition*, PAGEID#:4002.  The *Reply* does not disagree with this representation.  Based on this record, it appears that the parties have resolved their dispute as to these requests.  Accordingly, as it relates to Request Nos. 8 and 9, the *Motion* is **DENIED**.

## V.    Request for Fees

Finally, counterclaimants seek fees and costs associated with the filing of their *Motion*.  *Motion*, PAGEID#:3398; *Reply*, PAGEID#:4180.  A

court must ordinarily award a movant's reasonable expenses incurred in filing a motion to compel, including attorney's fees, if the motion to compel is granted, unless the nondisclosure, response, or objection was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). Where, as here, the motion is granted in part and denied in part, a court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). A court is vested with wide discretion in determining an appropriate sanction under Rule 37. *See*, *e.g.*, *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 169 F.R.D. 318, 321 (E.D. Mich. 1996). Here, the parties prevailed in approximate equal degree. Moreover, although the Court ultimately disagreed with Liang's position at times as to the issue of waiver of the attorney client privilege and the requests for production of documents, Liang cited to the record and relied on legal authority when responding to the *Motion*. For these reasons, the Court concludes that an award of sanctions would be inappropriate.

**WHEREUPON**, *Defendants' (1) Motion for an Order Declaring Waiver of Plaintiff's Attorney-Client Privilege With Her Former Lawyer Eric Goodman, and (2) Motion to Compel Plaintiff to Produce Documents*, ECF 176, is **GRANTED in part and DENIED in part** consistent with the foregoing. Liang's request sanctions under Local Rule 37.1, ECF 195, PAGEID#:4005, is **DENIED.**

                                        *s/  Norah McCann King*
December 15, 2015                        Norah McCann King
                                    United States Magistrate Judge